Law Office of Mary F. Chapman, Ltd.
Mary F. Chapman, Esq.
Nevada Bar No. 6591
8440 W. Lake Mead Blvd.
Suite 203
Las Vegas, Nevada 89128
(702)202-4223
(702)202-2003
Attorney for Goodwrx, LLC

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

LAJUANA MOTEN, and MARIO )
CARDENAS, on behalf of    )
themselves and all others)
similarly situated,       )      Case No.
                          )
          Plaintiffs,     )      **NOTICE TO FEDERAL COURT OF**
                          )      **REMOVAL OF CIVIL ACTION FROM**
v.                        )      **STATE COURT**
                          )
GOODWRX, LLC, a Nevada    )
Limited Liability Company)
and Does 1 through 50,    )
inclusive,                )
                          )
          Defendants.     )
_____ )

     Pursuant to 28 U.S.C. §1331 and 28 U.S.C. 1446(c), Defendant Goodwrx, LLC (hereafter "Goodwrx" or "Defendant") by and through its attorney of record, the Law Office of Mary F. Chapman, Ltd., hereby notifies the Court of the removal of *Lajuana Moten and Mario Cardenas, on behalf of themselves and all others similarly situated v. Goodwrx, LLC, a Nevada Limited Liability Company,* Case No. A-24-906408-B, which was filed in the Eighth Judicial District Court in Clark County, Nevada. In support of said removal, Defendant states as follows:

     1.   On November 19, 2024, an action was commenced in the Eighth Judicial District Court of Clark County, Nevada, entitled *Lajuana Moten and Mario Cardenas, on behalf of*

THE LAW OFFICES OF MARY F. CHAPMAN, LTD
8440 W. Lake Mead Blvd.
Suite 203
Las Vegas, Nevada 89128
Ph. (702) 202-4223
Fax (702) 202-2003

THE LAW OFFICES OF MARY F. CHAPMAN, LTD
8440 W. Lake Mead Blvd.
Suite 203
Las Vegas, Nevada 89128
Ph. (702) 202-4223
Fax (702) 202-2003

*themselves and all others similarly situated v. Goodwrx, LLC, a Nevada Limited Liability Company.* A copy of the Complaint is attached as **Exhibit A.**

2.    Defendant was served on December 5, 2024 with the Complaint and a Summons. A copy of the summons is attached hereto as **Exhibit B**.

3.    On December 24, 2024, Goodwrx filed a Motion to Dismiss. A copy of the Motion to Dismiss is attached hereto as **Exhibit C.**

4.    On January 7, 2025, Plaintiffs filed an Opposition to Defendant's Motion to Dismiss. A copy of the Opposition to the Motion to Dismiss is attached hereto as **Exhibit D.**

5.    On January 14, 2025, Plaintiffs filed a First Amended Complaint wherein a claim pursuant to 29 U.S.C. §207 was added. A copy of the First Amended Complaint is attached hereto as **Exhibit E**.

6.    This action is properly removed to federal court under federal question jurisdiction because Plaintiffs' Amended Complaint contains claims arising under federal law, specifically the Fair Labor Standards Act 29 U.S.C. §§201 *et. seq.* ("FLSA").

7.    Notice of Removal is being fled within thirty (30) days of receipt of the Amended Complaint setting forth the claim for relief which the action is based and is, therefore, timely under 28 U.S.C. 1446(c).

8.    This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. §1331, and is one

THE LAW OFFICES OF MARY F. CHAPMAN, LTD
8440 W. Lake Mead Blvd.
Suite 203
Las Vegas, Nevada 89128
Ph. (702) 202-4223
Fax (702) 202-2003

which may be removed to this Court pursuant to the provisions of 28 U.S.C. §1441(a), in that it is a civil action arising under the Constitution, laws, or treaties of the United States. Specifically, Plaintiffs allege conduct in violation of the Fair Labor Standards Act, 29 U.S.C. §201. The remaining state law claims are also properly removed pursuant to the Court's supplemental jurisdiction, 28 U.S.C. §1367(a).

9.  Venue is proper in th9is Court as this is the court for the district and division embracing the place where the action is pending in state court, 28 U.S.C §1391.

Wherefore, Defendant prays that the above-referenced action now pending in the Eighth Judicial District Court of the State of Nevada in and for Clark County be removed therefrom to this Court.

January 15, 2025

Respectfully submitted,
Law Office of Mary F. Chapman, Ltd.

 /S/ Mary F. Chapman, Esq. #6591
Mary F. Chapman, Esq.
8440 W. Lake Mead Blvd., Ste. 203
Las Vegas, Nevada 89128

- 3 -

THE LAW OFFICES OF MARY F. CHAPMAN, LTD
8440 W. Lake Mead Blvd.
Suite 203
Las Vegas, Nevada 89128
Ph. (702) 202-4223
Fax (702) 202-2003

**CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of January, 2025, I served a true and correct copy of the foregoing **Notice to Federal Court of Removal of Civil Action from State Court** via the Court's electronic filing system to:

Jason Kuller
Rachel Mariner
RAFII & ASSOCIATES, P.C.
1120 N. Town Center Dr., Suite 130
Las Vegas, Nevada 89144
Tel: (725) 245-6056
Fax: (725) 220-1802
jason@rafiilaw.com
rachel@rafiilaw.com
*Attorneys for Plaintiffs*

　/S/Mary F. Chapman, Esq. #6591
Law Office of Mary F. Chapman, Ltd.
8440 W. Lake Mead Blvd., Suite 203
Las Vegas, NV 89128

- 4 -

# EXHIBIT A

Electronically Filed
11/19/2024 11:52 PM
Steven D. Grierson
CLERK OF THE COURT

**COMP**
Jason Kuller, NV Bar No. 12244
Rachel Mariner, NV Bar No. 16728
RAFII & ASSOCIATES, P.C.
1120 N. Town Center Dr., Suite 130
Las Vegas, Nevada 89144
Tel: (725) 245-6056
Fax: (725) 220-1802
jason@rafiilaw.com
rachel@rafiilaw.com
*Attorneys for Plaintiffs*

CASE NO: A-24-906408-C
Department 13

## EIGHTH JUDICIAL DISTRICT COURT

## CLARK COUNTY, NEVADA

LAJUANA MOTEN and MARIO
CARDENAS, on behalf of themselves
and all others similarly situated,

    Plaintiffs,

v.

GOODWRX LLC, a Nevada Limited
Liability Company; and DOES 1 through
50, inclusive,

    Defendants.

Case No.
Dept. No.

**CLASS ACTION COMPLAINT**

1) Failure to Pay Wages for Each Hour Worked
   in Violation of NRS 608.016;

2) Failure to Pay Overtime in Violation of NRS
   608.018; and

3) Failure to Pay All Wages Due and Owing in
   Violation of NRS 608.020-050.

**JURY TRIAL DEMANDED**

Plaintiffs Lajuana Moten and Mario Cardenas (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, allege as follows:

1.      This is a class action for unpaid wages and overtime, attorneys' fees, costs, and interest under the Nevada Revised Statutes ("NRS") Chapter 608.

2.      All allegations in this Complaint are based on information and belief except for those allegations pertaining specifically to Plaintiffs, which are based on Plaintiffs' personal knowledge. Each allegation in this Complaint either has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

1
**CLASS ACTION COMPLAINT**
Case Number: A-24-906408-C

**PARTIES**

3.    Defendant Goodwrx LLC ("Defendant" or "Goodwrx") is a Nevada limited liability company that enables hospitality employers to meet critical labor needs by hiring temporary employees on a shift-by-shift basis through the Goodwrx App.  Temp workers hired and assigned through the Goodwrx App are paid directly by Goodwrx and considered Goodwrx employees.

4.    Plaintiff Lajuana Moten is a natural person who, within the last two years, has been employed by Goodwrx as a non-exempt hourly employee in Clark County, Nevada.

5.    Plaintiff Mario Cardenas is a natural person who, within the last two years, has been employed by Goodwrx as a non-exempt hourly employee in Clark County, Nevada.

6.    "Class Members" are all current and former hourly workers employed by Goodwrx at any time during the "Class Period" from two years before the filing of this complaint until the date of judgment in this action.

7.    The identities of Does 1-50 ("Doe Defendants") are unknown at this time, and Plaintiffs' complaint will be amended at such a time when Plaintiffs learn of their true identities. Plaintiff is informed and believes that each of the Doe Defendants is responsible in some manner for the acts, omissions, or representations alleged herein.  Specifically, Plaintiff is informed and believes that the hospitality employers hiring Plaintiffs and Class Members through the Goodwrx App may be Doe Defendants as joint employers with Goodwrx.

8.    Any reference in this Complaint to "Defendant," "Defendants," "Doe Defendants," or "Goodwrx" shall mean "Defendants and each of them."

**JURISDICTION AND VENUE**

9.    This Court has original jurisdiction over the claims alleged herein because the amount in controversy exceeds $15,000.

10.    Venue is proper in this Court because one or more of the Defendants maintains its principal place of business, or otherwise is found, in this judicial district and the acts complained of herein occurred in Clark County, Nevada.

**FACTUAL ALLEGATIONS**

11.    Plaintiff incorporates and realleges all paragraphs above.

2

**CLASS ACTION COMPLAINT**

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

## THE GOODWRX APP

12.    The Goodwrx App is marketed as a "technology solution…creating a labor centric gig economy one shift at a time." (*See* https://goodwrx.com (ellipsis and lower case added).). Available for both Apple and Android devices, the Goodwrx App promises employers "direct access to thousands of highly-skilled and experienced hospitality professionals to manage your labor needs." (*See* https://apps.apple.com/us/app/goodwrx-business/id1574508873.)    According to Goodwrx, "Here is how it works:

- Post shift-based jobs as early as same day
- Goodwrx instantly sends excusive offers to those who are qualified and best matched with your needs
- All timekeeping, payroll processing, IRS compliance, and workers comp is handled by Goodwrx"

(*Id.*)  Particularly relevant here, the Goodwrx App promises "Innovative time-keeping systems" that are "Portable" and "Low cost." (*See* https://goodwrx.com/#products.)

## PLAINTIFFS' OFF-THE-CLOCK WORK

13.    Goodwrx handled all employee timekeeping through the Goodwrx App.

14.    Plaintiffs and other Goodwrx employees were required to record their time worked on the Goodwrx App.

15.    More specifically, Plaintiffs and other employees were required to record the start and end times of their work via the "clock in" and "clock out" function on the Goodwrx App.

16.    However, the "clock in" and "clock out" function on the Goodwrx App *always* rounded work hours in favor of Goodwrx.[1]

17.    When Plaintiffs "clocked in" within 5 minutes *before* their scheduled start time, the Goodwrx App would round their clock-in time forward to the scheduled start time.  But if Plaintiffs "clocked in" within 5 minutes *after* their scheduled start time, the Goodwrx App would record the actual start time with no rounding backward.

18.    Conversely, when Plaintiffs "clocked out" up to 5 minutes *after* their scheduled end

---

[1] This rounding policy also favored any joint employer (*e.g.*, the hotel where a Goodwrx employee would be assigned for a given shift).

3

**CLASS ACTION COMPLAINT**

time, the Goodwrx App would round their clock-out time backward to the scheduled end time. But if Plaintiffs "clocked out" within 5 minutes *before* their scheduled end time, the Goodwrx App would record the actual end time with no rounding forward.

19. Furthermore, if Plaintiffs did not clock out within 5 minutes of their end time, the Goodwrx App would *automatically* clock them out. This "automatic" clock out time would then be automatically rounded backward to the scheduled end time, thereby ensuring no shift overtime would be worked.

20. There was no corresponding automatic clock-in at the start of Plaintiffs' shifts. If Plaintiffs failed or forgot to clock in, the Goodwrx App did not assume that Plaintiffs had started working.

21. Because Goodwrx employees were expected to report to work on time and to begin work on time, Plaintiffs and other employees frequently started working within 5 minutes before their scheduled start times.

22. Because these were temporary and usually first-time assignments, Plaintiffs and other employees did not know the precise amount of time it would take them to arrive at their work locations – especially considering the unpredictability of parking and the labyrinthine sprawl of a Las Vegas hotel. Plaintiffs and other employees thus erred on the side of arriving early at work.

23. Once at work and subject to supervision, Plaintiffs and other employees started working even if it were a few minutes before their scheduled start time, and even if it was before the five-minute window in which they were allowed to clock in. Plaintiffs and other employees did not want to risk being sent home – or not being hired again – by appearing to be lazy or "clockwatching."

24. By the same token, because Goodwrx employees were expected to work up until the end of their shifts, Plaintiffs and other employees practically never left work early. Indeed, it was far more usual for Plaintiffs and other employees to work a few minutes beyond the end of their shifts and sometimes beyond the five-minute cutoff for being automatically clocked out. On those occasions, Plaintiffs and other employees were automatically clocked out while still working.

25. Plaintiffs and other employees were sometimes paid daily overtime for working beyond their scheduled shifts, but this required a documented request to Goodwrx from the job site

4

**CLASS ACTION COMPLAINT**

supervisor. The job site supervisor, however, had no incentive to make such a request and was happy to accept "free" labor from Plaintiffs and other temp workers. Besides, Plaintiffs and other employees had no control or leverage over the job site supervisor to ensure any request would be made.

26.    In this way, Goodwrx's one-way rounding policy failed to compensate Plaintiffs and other employees for all time actually worked. Not only did the Goodwrx App prevent Plaintiffs and other employees from recording any time worked outside their scheduled shifts, but Goodwrx also prevented Plaintiff and other employees from ever benefitting under its rounding policy. The rounding policy embedded in the Goodwrx App did not "even out" or average out over time and was, instead, always skewed in favor of Goodwrx.

27.    Furthermore, to the extent Plaintiffs and other employees worked 8 hours a day or 40 hours a week, any unpaid "rounding" time also constitutes unpaid daily or weekly overtime.

28.    Rather than accurately recording employees' work hours – *i.e.*, recording their actual clock-in and clock-out times – Goodwrx put the burden on Plaintiffs and other employees to report any errors in their time records and to request that Goodwrx fix the errors manually. Yet because of the way the Goodwrx App was programmed, timekeeping errors *were the rule* – not the exception. One-way rounding is a *feature* of the Goodwrx App, not a bug.[2]

29.    Nor would Goodwrx compensate employees for the necessary time spent reporting and following up with Goodwrx to have their time records corrected. Nor was there any guarantee that Goodwrx would fix the errors at all. The only thing stated in the Goodwrx Employee Handbook is that "Goodwrx will *attempt* to correct *legitimate* errors." (Goodwrx Employee Handbook ["Handbook"] at § 2-4 (emphasis added).) Goodwrx, of course, is the arbiter of what constitutes a "legitimate" error.

30.    Ms. Moten's last day of work for Goodwrx was in or around December 2022; Mr. Cardenas' last day of work for Goodwrx was in or around March 2023.

31.    To date, Plaintiffs have not been paid wages and overtime for all "rounding" and off-the-clock time worked.

_____

[2] Perhaps this is what Goodwrx means in describing its "Innovative timekeeping system" as "Low cost." (*See* https://goodwrx.com/#products.)

5

**CLASS ACTION COMPLAINT**

**CLASS ACTION ALLEGATIONS**

32.    Plaintiffs incorporate and reallege all paragraphs above.

33.    Plaintiffs bring this action on behalf of themselves and all similarly-situated employees as a class action under Nevada Rule of Civil Procedure 23.

34.    At all relevant times, Plaintiffs and Class Members were each an "employee" within the meaning of Nevada law. *See* NRS 608.010.

35.    At all relevant times, Goodwrx was an "employer" of Plaintiffs and Class Members within the meaning of Nevada law. *See* NRS 608.011.

36.    At all relevant times, Goodwrx implemented, maintained, and enforced a rounding policy that deprived Plaintiffs and Class Members from being paid for all hours and overtime worked beyond their scheduled shift times.

37.    At all relevant times, there was no practical administrative difficulty in recording – and paying for – the actual hours and overtime worked by Plaintiffs and Class Members.

38.    At all relevant times, Goodwrx had actual or constructive knowledge that Plaintiffs and Class Members were performing work outside their scheduled shift hours and, particularly, within the 5-minute "rounding" windows on either side of their shifts.

39.    To date, neither Plaintiffs nor Class Members have not been paid all wages and overtime owed by Goodwrx.

40.    Class treatment of Class Members is appropriate under Rule 23 for the following reasons:

A.    *Numerosity*: Class Members are so numerous that joinder would be impractical, and the disposition of their claims on a class (rather than individual) basis will conserve resources of the parties and judicial system. While the number of Class Members is unknown at this time, this information can be readily ascertained from Defendant's business records. Upon information and belief, Defendant employs, or has employed, over 200 Class Members during the Class Period.

B.    *Commonality*: Common questions of law and fact exist and predominate as to Plaintiffs and Class Members, including, but not limited to: (1) whether the rounding policy implemented by Goodwrx is legal under Nevada law; (2) whether the Goodwrx App deprived

6

**CLASS ACTION COMPLAINT**

Plaintiffs and Class Members of compensation for all hours and overtime worked; and (3) whether Plaintiffs and Class Members have been paid all wages due and owing at the separation of their employment.

C.    *Typicality*: Plaintiffs' claims are typical of the claims of Class Members because Plaintiffs and Class Members were subject to the same employment policies and practices of Goodwrx during the Class Period, and each of them sustained damages. Proof of a common or single state of facts will therefore establish the right of Plaintiffs and Class Members to recover.

D.    *Adequacy*: Plaintiffs will fairly and adequately represent the interests of Class Members because Plaintiffs are Class Members and have the same legal and factual issues as Class Members and have no interests antagonistic to Class Members. Plaintiffs have retained legal counsel competent and experienced in class actions, including labor and employment litigation. Plaintiffs and their counsel are aware of their fiduciary responsibilities to Class Members and are determined to discharge those duties diligently by vigorously seeking the maximum possible recovery for Class Members.

E.    *Superiority*: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Each Class Member has been damaged and is entitled to recovery by reason of Defendant's illegal rounding policy and practice. Class action treatment will permit a relatively large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of effort and expense. Furthermore, the prosecution of individual lawsuits by each Class Member would present the risk of inconsistent and contradictory judgments, along with the potential for establishing inconsistent standards of conduct for Defendants and other state employers. Consequently, an important public interest will be served by addressing this matter as a class action.

41.    Plaintiffs reserve the right to modify or redefine "Class Members" for purposes of this action and to add subclasses as appropriate based on further investigation, discovery, and theories of liability.

///
///

7
**CLASS ACTION COMPLAINT**

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

## FIRST CAUSE OF ACTION

### Failure to Compensate for Each Hour Worked

**(On Behalf of Plaintiffs and Class Members)**

42. Plaintiffs incorporate and reallege all paragraphs above.

43. NRS 608.016 states that "An employer shall pay to the employee wages for each hour the employee works."

44. Hours worked means anytime the employer exercises "control or custody" over an employee. *See* NRS 608.011 (defining an "employer" as "every person having control or custody of any employment, place of employment or any employee.").

45. Pursuant to the Nevada Administrative Code, hours worked includes "all time worked by the employee at the direction of the employer, including time worked by the employee that is outside the scheduled hours of work of the employee." N.A.C. 608.115(1).

46. Here, Goodwrx failed to pay Plaintiffs and Class Members for all "rounding" time and off-the-clock work outside their scheduled shift hours.

47. Defendant's policy and practice violated NRS 608.016, which requires payment for each and every hour worked.

48. Wherefore, Plaintiffs and Class Members demand payment by Defendant at their regular hourly rate of pay for each and every hour worked during the Class Period, together with attorney's fees, costs, and interest as provided by law.

## SECOND CAUSE OF ACTION

### Failure to Pay Overtime Wages

**(On Behalf of Plaintiffs and Class Members)**

49. Plaintiffs incorporate and reallege all paragraphs above.

50. NRS § 608.018(1) generally requires employers to pay overtime at 1½ times an employee's regular wage rate for all hours worked in excess of 8 per day or 40 per week.

51. The Goodwrx Employee Handbook also states that "[a]ny non-exempt employee who works overtime will be compensated at the rate of one and one-half times (1.5) their normal hourly wage for all time worked in excess of 40 hours each week or 8 hours on a given workday...."

8

**CLASS ACTION COMPLAINT**

(Handbook at §2-5.)

52.    Here, by failing to pay for each hour worked as hereinabove provided, Goodwrx also failed to pay overtime to Plaintiffs and Class Members who worked over 8 hours in a workday and over 40 hours in a workweek.

53.    Wherefore, Plaintiffs and Class Members demand payment at one and one-half times their regular rate of pay for all hours worked in excess of 8 hours in a workday and 40 hours in a workweek during the Class Period together with attorney's fees, costs, and interest as provided by law.

**THIRD CAUSE OF ACTION**

**Failure to Pay All Wages and Compensation Due**

**(On Behalf of Plaintiffs and Class Members)**

54.    Plaintiffs incorporate and reallege all paragraphs above.

55.    NRS 608.020 provides that "[w]henever an employer discharges an employee, the wages and compensation earned and unpaid at the time of such discharge shall become due and payable immediately."

56.    NRS 608.040(1)(a-b), in relevant part, states that "Within 3 days after the wages or compensation of a discharged employee becomes due; or on the day the wages or compensation is due to an employee who resigns or quits, the wages or compensation of the employee continues at the same rate from the day the employee resigned, quit, or was discharged until paid for 30-days, whichever is less."

57.    NRS 608.050 grants an "employee lien" to each discharged or laid-off employee for the purpose of collecting the wages or compensation owed to them "in the sum agreed upon in the contract of employment for each day the employer is in default, until the employee is paid in full, without rendering any service therefor; but the employee shall cease to draw such wages or salary 30 days after such default."

58.    Here, by failing to pay Plaintiffs and Class Members for all hours and overtime worked as hereinabove provided, Goodwrx has failed to timely remit all wages and compensation due and owing to Plaintiffs and Class Members upon separation of their employment.





RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

59.    Wherefore, Plaintiffs and Class Members demand up to thirty (30) days wages under NRS 608.040 and NRS 608.050, together with attorneys' fees, costs, and interest as provided by law.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs, individually and on behalf of Class Members and all others similarly situated, pray for relief as follows:

1.    For damages according to proof of the regular rate of pay for each and every hour worked;

2.    For damages according to proof of overtime compensation at one and one-half the regular rate of pay for all unpaid worked over 40 in a week or over 8 hours in day;

3.    For up to 30 days of wages pursuant to NRS 608.040 and 608.050 for Plaintiffs and all Class Members separated from employment;

4.    For an order certifying this action as a class action under NRCP 23 on behalf of Class Members;

5.    For an order appointing Plaintiffs as Representatives of the Class and their counsel as Class Counsel;

6.    For reasonable attorneys' fees authorized by statute, common law, or equity;

7.    For costs of suite incurred herein;

8.    For pre-judgment and post-judgment interest at the maximum legal rate;

9.    For exemption from the Nevada Arbitration Rules pursuant to N.A.R 3 and 5; and

10.    For such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demands trial by jury of the above-captioned matter pursuant to Nevada Rule of Civil Procedure 38.

DATED: November 19, 2024                 **RAFII & ASSOCIATES, P.C.**

By:    */s/ Jason Kuller*
                JASON KULLER
                Of Counsel
                *Attorneys for Plaintiff*

10

**CLASS ACTION COMPLAINT**

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

# EXHIBIT B

Electronically Issued
11/25/2024 4:01 PM

Served
12/5/24

**SUMM**
Jason Kuller, Esq.
Nevada Bar No. 12244
Rachel Mariner, Esq.
Nevada Bar No. 16728
RAFII & ASSOCIATES, P.C.
1120 N. Town Center Dr., Ste. 130
Las Vegas, Nevada 89144
Tel: 725.245.6056
Fax: 725.220.1802
jason@rafiilaw.com
rachel@rafiilaw.com
*Attorneys for Plaintiff*



RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

# EIGHTH JUDICIAL DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| LAJUANA MOTEN and MARIO CARDENAS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>GOODWRX LLC, a Nevada limited liability company; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.:   A-24-906408-C<br>Dept. No.: |

## SUMMONS

**NOTICE! YOU HAVE BEEN SUED. THE COURT MAY DECIDE AGAINST YOU WITHOUT YOUR BEING HEARD UNLESS YOU FILE A RESPONSE WITH THE COURT WITHIN 21 DAYS. READ THE INFORMATION BELOW CAREFULLY.**

To the Defendant named above: **GOODWRX LLC**

A civil complaint has been filed by the Plaintiff against you. Plaintiff is seeking to recover the relief requested in the complaint, which could include a money judgment against you or some other form of relief.

If you intend to defend this lawsuit, within 21 calendar days [1] after this Summons is served on you (not counting the day of service), you must:

---

[1] The State of Nevada, its political subdivisions, agencies, officers, employees, board members, commission members, and legislators each have 45 days after service of this Summons within which to file a response to Plaintiff's complaint.

1

**SUMMONS**
Case Number: A-24-906408-C

1. File with the Clerk of the Court, whose address is shown below, a formal written response (typically a legal document called an "answer," but potentially some other response) to Plaintiff's complaint.

2. Pay the required filing fee to the court, or file an Application to Proceed *In Forma Pauperis* and request a waiver of the filing fee

3. Serve (by mail or hand delivery) a copy of your response upon the Plaintiff whose name and address is shown below.

> **Information and forms to assist you are available, free of charge, at the Civil Law Self-Help Center at the Regional Justice Center, 200 Lewis Avenue, Las Vegas, Nevada, and on the center's website at www.civillawselfhelpcenter.org.**

If you fail to respond, the Plaintiff can request your default. The court can then enter judgment against you for the relief demanded by the Plaintiff in the complaint, which could result in money or property being taken from you or some other relief requested in Plaintiff's complaint.

If you intend to seek an attorney's advice, do it quickly so that your response can be filed on time.

**CLERK OF THE COURT**

By: _____    11/27/2024
Deputy Clerk                 Date: _____
Regional Justice Center
200 Lewis Avenue
Las Vegas, Nevada 89155

DATED: November 25, 2024                    Issued at the request of:

**RAFII & ASSOCIATES, P.C.**

By:    */s/ Jason Kuller*
       _____
       JASON KULLER, ESQ.

       Attorneys for Plaintiffs



RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

2

**SUMMONS**

# EXHIBIT C

**Electronically Filed**
**12/24/2024 4:12 PM**
**Steven D. Grierson**
**CLERK OF THE COURT**

Law Office of Mary F. Chapman, Ltd.
Mary F. Chapman, Esq.
Nevada Bar No. 6591
8440 W. Lake Mead Blvd.
Suite 203
Las Vegas, Nevada 89128
(702)202-4223
(702)202-2003
Attorney for Goodwrx, LLC

**EIGHTH JUDICIAL DISTRICT COURT**
**CLARK COUNTY, NEVADA**

LAJUANA MOTEN, and MARIO )
CARDENAS, on behalf of )
themselves and all others)
similarly situated,      )      Case No. A-24-906408-C
                         )
        Plaintiffs,      )      Department 13
                         )
v.                       )
                         )
GOODWRX, LLC, a Nevada   )
Limited Liability Company)
and Does 1 through 50,   )
inclusive,               )
                         )
        Defendants.      )
_____)

**MOTION TO DISMISS**

Defendant Goodwrx, LLC by and through its attorney of record, the Law Office of Mary F. Chapman, Ltd., hereby moves the Court for Dismissal for Lack of Jurisdiction pursuant to NRCP 12(b)(1). Goodwrx supports its motion based upon the declaration of Nathan Armogan and the attached points and authorities.

**FACTS:**

Plaintiff Lajuana Moten was employed as a temporary worker with Goodwrx from June 11, 2022 through December 1, 2022. *See*, Armogan Declaration ¶¶2 & 3, and Exhibit A, Moten Records. Plaintiff Moten's only shift during the two year statute of limitation period was on December 1, 2022, at Triple George Grille. *Id.* Plaintiff Moten clocked in for her shift using the

THE LAW OFFICES OF MARY F. CHAPMAN, LTD
8440 W. Lake Mead Blvd.
Suite 203
Las Vegas, Nevada 89128
Ph. (702) 202-4223
Fax (702) 202-2003

Goodwrx App at 3:30 p.m. and clocked out using the Goodwrx App at 7:30 p.m. *Id.* Ms. Moten was paid in full for her four hour shift. *Id.* Ms. Moten violated Goodwrx policy by not taking a photograph and uploading the sign in sheet for her Triple George Grille shift. *Id.* No time clock rounding occurred for Ms. Moten's shift. *Id.*

Plaintiff Mario Cardenas was employed as a temporary worker with Goodwrx from November 19, 2022 to March 5, 2023. *See*, Armogan Declaration ¶¶4 & 5, and Exhibit B, Cardenas Records. Plaintiff Cardenas worked seven shifts during the two year statute of limitation period: Downtown Grand Casio on November 19, 2022, January 27, 2023 and March 5, 2023; Belliagio on January 6, 2023; Caesars Palace on December 29, 2022; and Treasure Island on December 27, 2022 and December 2, 2022. *Id.* November 19, 2022 - clocked in at 10:30 and provided the sign in sheet to confirm his attendance. *Id.* December 2, 2022 - clocked in at 18:25 from inside the parking garage. Mr. Cardenas did not provide a photograph of the sign in sheet. *Id.* December 27, 2022 - clocked in at 16:55, Mr. Cardenas did not provide a photograph of the sign in sheet. *Id.* December 29, 2022 - clocked in at 9:55, Mr. Cardenas did not provide a photograph of the sign in sheet. *Id.* January 6, 2023 - clocked in at 5:55, from the pool area. Mr. Cardenas did not provide a photograph of the sign in sheet. *Id.* January 27, 2023 - clocked in at 7:57, Mr. Cardenas did not provide a photograph of the sign in sheet. *Id.* March 5, 2023 - clocked in at 15:58, from off property. Mr.

THE LAW OFFICES OF MARY F. CHAPMAN, LTD
8440 W. Lake Mead Blvd.
Suite 203
Las Vegas, Nevada 89128
Ph. (702) 202-4223
Fax (702) 202-2003

Cardenas did not provide a photograph of the sign in sheet. *Id.*

Originally, Goodwrx rounded time clock punches by five (5) minutes, but on February 12, 2023, Goodwrx shortened its time clock rounding to two (2) minutes. *See*, Armogan Declaration ¶6. No employee actually starts working at the time they clock in, the properties policy and the unions collective bargaining agreement state employees are not entitled to payment until they are actually at their assigned position ready to work. *Id.* The clock rounding policy allows employees to clock in and change if necessary, put their personal items away and then proceed to their work stations, requesting the sign in sheets is Goodwrx way to insure the employees actually arrive at the work station on time. *Id.*

**LEGAL ARGUMENT:**

Pursuant to NRCP 12(d) the Court can consider the evidence attached hereto without converting this into a NRCP 56 motion because this motion is based upon NRCP 12(b)(1) wherein the Court lacks subject matter jurisdiction over this case. *See*, NRCP 12*(b); see also, Ohfuji Invs., LLC v. Citibank, N.A.*, 2019 Nev. App. Unpub. LEXIS 1015 *footnote 2, 135 Nev. 696, 2019 WL 6826503[1]. District courts have original jurisdiction in cases where the amount of controversy exceeds $15,000. *See* Nev. Const. art. 6, § 6(1); NRS 4.370(1)(a)-(w). A claim for damages satisfies the jurisdictional amount in controversy unless "it . . . appear[s] to a legal certainty that the [damages are] worth

---

[1] A copy of the unpublished opinion is attached hereto for the Court's convenience.

less than the jurisdictional amount." *See Edwards v. Direct Access, LLC*, 121 Nev. 930, 933, 124 P.3d 1158, 1160 (2005).

The Complaint itself alleges unpaid wages based upon an alleged rounding of time clock punches of 5 minutes. This allegation alone raises question in obtaining an amount in controversy in excess of the required fifteen thousand dollars ($15,000.00). However, a review of the named Plaintiffs' actual time records establishes that Plaintiff Moten worked a single shift on December 1, 2022, within the statute of limitations. Ms. Moten worked at Triple George Grille, she clocked in through the Goodwrx app at 3:30 and clocked out at 7:30, no rounding occurred. Ms. Moten was paid in full for the four hours she claimed to have worked.

Mr. Cardenas three times stole time from his employer by clocking in when he was not anywhere near his work station. In the remaining four shifts Mr. Cardenas did have his time rounded three times, twice by five minutes and once by three minutes. Mr. Cardenas is obviously not owed any money as he has been paid for all time worked, and given the walking distance in the casinos and his need to actually continue to drive to the casino on one instance, he likely owes Goodwrx for stolen time. However, this balancing of time given and time taken complies with the legal opinion issued by the Nevada Labor Commissioner's Office wherein the Labor Commissioner approved of time clock rounding to be used in Nevada[2].

---

[2] The Nevada Labor Commissioner's issued legal opinion is attached hereto for the Court's convenience.

- 4 -

THE LAW OFFICES OF MARY F. CHAPMAN, LTD
8440 W. Lake Mead Blvd.
Suite 203
Las Vegas, Nevada 89128
Ph. (702) 202-4223
Fax (702) 202-2003

In any event, even if the Court wants to consider the 13 minutes of rounded time as money owed, the rounded time has a maximum value of $1.02 on 12/27/22; $1.28 on 12/29/22; and $0.78 for a total of $3.08. Plaintiffs accordingly cannot establish legal jurisdiction in this Court under any circumstance.

A district court may inquire into an attorney's possible bad faith in claiming damages to meet the jurisdictional limit of the district court. *See*, *St. Paul Indemnity Co. v. Cab Co.*, 303 U.S. 283, 288-89, 82 L. Ed. 845, 58 S. Ct. 586 (1938) (damages claimed must be pleaded in good faith). According to NRCP 11, a party is required to have a reasonable basis for alleging damages in a complaint that is "well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." The signature of the attorney constitutes certification that to the best of his or her knowledge the pleading adheres to these guidelines. "NRCP 11 thus applies to a jurisdictional allegation and/or a claim of damages which furnishes the basis for subject matter jurisdiction in district court. The district court may conduct a hearing to determine whether the potential damages in a case fall below the jurisdictional threshold, although it may not rely on statements made in settlement negotiations in making that determination." *See, Morrison v. Beach City LLC*, 116 Nev. 34, 39 (2000).

**CONCLUSION:**

The amount in controversy must be at least fifteen thousand dollars ($15,000.00) to meet the threshold for this Court's jurisdiction. Since the employment records clearly establish the amount in controversy grossly fails to establish the Court's

THE LAW OFFICES OF MARY F. CHAPMAN, LTD
8440 W. Lake Mead Blvd.
Suite 203
Las Vegas, Nevada 89128
Ph. (702) 202-4223
Fax (702) 202-2003

-5-

jurisdiction, the Court must dismiss this case for lack of jurisdiction pursuant to NRCP 12(b)(1).

December 24, 2024          Respectfully submitted,
                           Law Office of Mary F Chapman, Ltd.


                           /S/ Mary F Chapman, Esq.
                           Mary F. Chapman, Esq.
                           8440 West Lake Mead Blvd.
                           Suite 203
                           Las Vegas, NV 89128
                           maryf.chapman@juno.com

THE LAW OFFICES OF MARY F. CHAPMAN, LTD
8440 W. Lake Mead Blvd.
Suite 203
Las Vegas, Nevada 89128
Ph. (702) 202-4223
Fax (702) 202-2003

- 6 -

BRIAN SANDOVAL
Governor

BRUCE BRESLOW
Director

THORAN TOWLER
Labor Commissioner

STATE OF NEVADA



Department of Business & Industry

# OFFICE OF THE LABOR COMMISSIONER

http://www.LaborCommissioner.com

- OFFICE OF THE LABOR COMMISSIONER
  555 E. WASHINGTON AVENUE, SUITE 4100
  LAS VEGAS, NEVADA 89101
  PHONE (702) 486-2650
  FAX (702 486-2660

- OFFICE OF THE LABOR COMMISSIONER
  675 FAIRVIEW DRIVE, SUITE 226
  CARSON CITY, NEVADA 89701
  PHONE (775) 687-4850
  FAX (775) 687-6409

June 21, 2013

Mr. Rob Parker
Human Resources Representative
Nevada Association of Employers

> Re:   Advisory Opinion of the Nevada Labor Commissioner
>        Use of time clock rounding to calculate employee pay

Mr. Parker:

In response to your request for an Advisory Opinion from the Nevada Labor Commissioner as to *whether the use of time clock rounding to calculate employee pay is appropriate under Nevada law,* the Office of the Labor Commissioner has conducted a thorough review of all relevant statutes, regulations, and case law. It is the position of the Nevada Labor Commissioner that time clock rounding is appropriate so long as the rounding policy is used in a manner that does not result, over a period of time, in a failure to compensate employees properly for all the time actually worked.

## I.    THERE IS NO NEVADA LAW REGARDING TIME CLOCK ROUNDING

Although the Nevada Labor Commissioner recognizes that many Nevada employers engage in time clock rounding to calculate employee pay, there is no Nevada statute or case law permitting or prohibiting such a practice. However, pursuant to NRS 608.016, employers are required to compensate employees for all time worked. If time clock rounding results in an employer failing to compensate an employee for all time the employee actually worked, the employer would be in violation of NRS 608.016 and subject to an adverse final decision by the Labor Commissioner. Therefore, the only time this office becomes concerned with time clock rounding is when it fails to adequately compensate employees.

However, the Office of the Labor Commissioner has been receiving an increasing number of questions from Nevada employers and employees alike concerned about time clock rounding despite this office's position. Therefore, the Office of the Labor Commissioner has undertaken a careful review of all relevant federal regulations under the Fair Labor Standards Act and authority in other states for guidance and to alleviate those concerns.

## II.    FEDERAL LAW PERMITS TIME CLOCK ROUNDING

Under the Fair Labor Standards Act (FLSA), employers are permitted to use time clock rounding under certain circumstances. Specifically, the federal regulation states:

> It has been found that in some industries, particularly where time clocks are used, there has been the practice for many years of recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour. Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually worked. *For enforcement purposes this practice of computing working time will be accepted provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.* (29 C.F.R. § 785.48(b), emphasis added.)

Courts have consistently held that this regulation permits employers to use time rounding in determining employee pay so long as the policy is neutral on its face and in its application and does not, on average, under-compensate employees. Therefore, as long as time clock rounding policies do not result, over time, in a failure to compensate employees for all time actually worked, employers who round are in compliance with federal law.

Additionally, as the regulation itself indicates, employers across the country have used time clock rounding as a method for calculating time worked for many years. Absent controlling or conflicting state law, there is no reason why this practice could not continue.

## III.    OTHER STATES FOLLOW FEDERAL LAW PERMITTING TIME CLOCK ROUNDING

Many states, like Nevada, do not specifically address time clock rounding by statute, regulation, or case law. However, these states construe the requirements of their wage and hour laws in a manner consistent with the federal regulation permitting time clock rounding. For example, an Arizona court found that because Arizona had no law that "disapproves of the federal rounding regulations or suggests that these regulations are inconsistent with the policies underlying the

Arizona wage laws" that it was reasonable to interpret Arizona law in a manner consistent with the federal regulation. East v. Bullocks, Inc., 34 F.Supp.2d 1176, 1184 (D. Ariz. 1998).

More recently, a California court approved of time clock rounding so long as "the rounding policy is fair and neutral on its face and 'it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they actually worked.'" See's Candy Shops, Inc. v. Superior Court, 210 Cal. App. 4th 889, 907 (Cal. App. 4th Dist. 2012). The Court recognized that time clock rounding is a practical method for calculating time worked and can be a neutral calculation tool for paying employees. Further, the net effect of time clock rounding is to allow employers to efficiently calculate hours worked without imposing unnecessary burdens on employees.

### IV.    TIME CLOCK ROUNDING IS NOT INCONSISTENT WITH NEVADA LAW

The Office of the Labor Commissioner is tasked with enforcing Nevada wage and hour laws. In particular, this office is charged with ensuring that all employees are treated fairly under the law. It is the position of the Nevada Labor Commissioner that time clock rounding is not inconsistent with Nevada wage and hour laws.

For enforcement purposes, so long as Nevada employers utilize a time clock rounding policy that will not result, over time, in a failure to compensate employees properly for all time worked, they will not be in violation of Nevada law, pursuant to NRS 608.016. For this office to take a different position would result in an additional burden on Nevada employers and deny them a practical and effective tool for calculating time worked that is available to all other employers throughout the country.

### CONCLUSION

After a thorough review of all applicable statutes and authority, it is the position of the Nevada Labor Commissioner that time clock rounding is appropriate so long as the rounding policy is used in a manner that does not result, over a period of time, in a failure to compensate employees properly for all the time actually worked.

Sincerely,

Thoran Towler
Nevada Labor Commissioner

No *Shepard's* Signal™
As of: December 24, 2024 10:27 PM Z

## *Ohfuji Invs., LLC v. Citibank, N.A.*

Court of Appeals of Nevada

December 12, 2019, Filed

No. 75611-COA

### Reporter

2019 Nev. App. Unpub. LEXIS 1015 *; 135 Nev. 696; 2019 WL 6826503

OHFUJI INVESTMENTS, LLC, A NEVADA LIMITED LIABILITY COMPANY, Appellant, vs. CITIBANK, N.A., AS SUCCESSOR TRUSTEE TO US BANK, NATIONAL ASSOCIATION AS TRUSTEE UNDER THE POOLING AND SERVICING AGREEMENT, DATED AS OF JULY 1, 2007 MASTR ADJUSTABLE RATE MORTGAGES TRUST 2007-HF2 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-HF2, C/O OCWEN LOAN SERVICING, LLC; AND WESTERN PROGRESSIVE-NEVADA, INC., Respondents.

**Notice:** NOT DESIGNATED FOR PUBLICATION. PLEASE CONSULT THE NEVADA RULES OF APPELLATE PROCEDURE FOR CITATION OF UNPUBLISHED OPINIONS.

PUBLISHED IN TABLE FORMAT IN THE NEVADA REPORTER.

## Core Terms

district court, sale order, bankruptcy court, recording, void, unjust enrichment, underlying proceeding, validity of the sale, foreclose, subject matter jurisdiction, factual dispute, threshold issue, standing issue, trust deed, jurisdiction-retention, automatically, prerequisite, parties, waived, ripe

**Judges:** [*1] Gibbons, C.J., Tao, J., Bulla, J.

## Opinion

*ORDER OF REVERSAL AND REMAND*

Ohfuji Investments, LLC, appeals from a district court order dismissing its complaint in a real property action. Eighth Judicial District Court, Clark County; Adriana Escobar, Judge.

The original owners of the subject property defaulted on their home loans and filed for bankruptcy. The bankruptcy proceeding resulted in the sale of the property, subject to all existing liens and encumbrances, to non-party Fuji Investment, LLC. Fuji later executed a grant, bargain, and sale deed to transfer the property to Ohfuji. Meanwhile, respondents Citibank, NA., and Western Progressive Nevada, Inc., initiated the nonjudicial foreclosure process to foreclose on the deed of trust securing the loan on the property. And Ohfuji responded by commencing the underlying proceeding, which involved claims against respondents for violation of *NRS 107.080*, declaratory relief, and unjust enrichment.

Respondents moved to dismiss Ohfuji's claims under *NRCP 12(b)(5)*,[1] asserting among other things, that Ohfuji lacked standing to present its claims because it did not have an interest in the property. In particular, respondents observed that, pursuant to the bankruptcy court order [*2] authorizing the sale to Fuji (referred to herein as the sale order), the sale was automatically void unless the sale order, the bankruptcy trustee's deed of sale, and the declaration of value were recorded within 14 days of their delivery to Fuji. And because the sale order was never recorded, respondents argued that the sale to Fuji was void, such that Fuji could not have transferred an interest in the property to Ohfuji. Moreover, respondents argued that because they had yet to foreclose, Ohfuji's claim for unjust enrichment was not ripe. Ohfuji disagreed and further argued that the district court lacked jurisdiction to resolve the matter because the bankruptcy court expressly retained

---

[1] On December 31, 2018, the Nevada Supreme Court amended the Nevada Rules of Civil Procedure, effective March 1, 2019. *See In re Creating a Comm. to Update & Revise the Nev. Rules of Civil Procedure*, ADKT 0522 (Order Amending the Rules of Civil Procedure, the Rule of Appellate Procedure, and the Nevada Electronic Filing and Conversion Rules, December 31, 2018). While those amendments do not affect the disposition of this appeal, for clarity, we note that the citations in this text are to the current version of the NRCP.

Mary Chapman

jurisdiction in the sale order to "interpret, implement, and enforce" the order and to "resolve any disputes, controversies, or claims arising [thereunder]." Without addressing Ohfuji's argument concerning the bankruptcy court's jurisdiction, the district court agreed with respondents and granted their **motion** for the reasons set forth therein.[2] This appeal followed.

Based on the jurisdiction-retention clause in the sale [*3] order, Ohfuji argues on appeal that, before the district court addressed standing, it should have stayed the underlying proceeding to permit the bankruptcy court to evaluate whether the sale to Fuji was void given Fuji's alleged failure to comply with the sale order's recording requirements. Respondents counter that, because standing is a prerequisite to subject matter jurisdiction, the district court could resolve any issues necessary to determine Ohfuji's standing to present its claims. Initially, respondents are correct that standing is a prerequisite to subject matter jurisdiction, *see Associated Builders & Contractors, Inc. v. S.F. Airports Comm'n, 21 Cal. 4th 352, 87 Cal. Rptr. 2d 654, 981 P.2d 499, 504 (Cal. 1999)* (reasoning that standing is jurisdictional), and that the district court had jurisdiction to evaluate Ohfuji's standing. *Cf. Taylor v. Hubbell, 188 F.2d 106, 109 (9th Cir. 1951)* ("It is axiomatic that [e]very court of general jurisdiction has power to determine whether the conditions essential to its exercise exist." (internal quotation marks omitted)). But with respect to Ohfuji's standing, the question of whether the sale to Fuji was valid under the bankruptcy court's sale order is a threshold issue since it is determinative of whether Ohfuji had an interest in the property that would be injured if respondents foreclosed. *See Schwartz v. Lopez, 132 Nev. 732, 743, 382 P.3d 886, 894 (2016)* (explaining [*4] that standing is

primarily a question of whether the plaintiff has a sufficient interest in the litigation, which is generally established by showing that the plaintiff suffered a personal injury).

As discussed above, respondents essentially argue that the district court could resolve that threshold issue based on its jurisdiction to determine standing, irrespective of any jurisdictional conflict with the bankruptcy court to the extent Ohfuji's standing turned on the validity of the sale based on the bankruptcy court's sale order. But respondents have not cited any legal authority to support that proposition, and we therefore decline to address it. *See Edwards v. Emperor's Garden Rest., 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006)* (explaining that this court need not consider issues that are not supported by cogent argument). Respondents also vaguely assert that, because the sale to Fuji was automatically void under the sale order if the recording requirements were not satisfied, the district court could proceed directly to resolving the standing issue. But the record reflects a potential factual dispute with respect to whether the sale order was delivered to Fuji and whether Fuji was required to comply with the order's recording requirements as a result. And [*5] because respondents do not address whether the district court or the bankruptcy court should have resolved that factual dispute given the sale order's jurisdiction-retention clause, they have waived any challenge to Ohfuji's assertion that, before ruling on the question of Ohfuji's standing, the district court should have stayed the underlying proceeding so that the bankruptcy court could assess the validity of the sale to Fuji. *See Powell v. Liberty Mut. Fire Ins. Co., 127 Nev. 156, 161 n.3, 252 P.3d 668, 672 n.3 (2011)* (providing that arguments not raised on appeal are deemed waived).

Aside from the standing issue, the parties further dispute the propriety of the district court's alternate holding that Ohfuji's unjust enrichment claim was unripe. But because the bankruptcy court's resolution of the question of whether the sale to Fuji was void may render Ohfuji's unjust enrichment claim moot, we conclude that the district court's resolution of the ripeness issue was premature.

Accordingly, we reverse the dismissal of Ohfuji's claims and remand this matter so that the district court may afford the parties an opportunity to seek a determination from the bankruptcy court with respect to the validity of

---

[2] If respondents were simply arguing that Ohfuji failed to state a claim, then the district court should have **converted** their **motion** to one for relief under *NRCP 56*, as the court's order indicates that it considered matters outside of the pleadings. *See NRCP 12(b)* (providing that, if "matters outside the pleading are presented to and not excluded by the [district] court," a **motion** to dismiss pursuant to *NRCP 12(b)(5)* "shall be treated as one for summary judgment and disposed of as provided in *Rule 56*"). But while respondents indicated that they were seeking relief under *NRCP 12(b)(5)*, their arguments were directed at the court's subject matter jurisdiction and therefore fell under *NRCP 12(b)(1)*, such that the district court was not required to **convert** their **motion**. *NRCP 12(d)* (permitting the district court to consider matters outside the pleadings in evaluating requests for relief under *NRCP 12(b)(1)*.

2019 Nev. App. Unpub. LEXIS 1015, *5

the sale to Fuji.[3]

It is so ORDERED.[4]

/s/ Gibbons, C.J.

Gibbons

/s/ Tao, J.

 [*6] Tao

/s/ Bulla, J.

Bulla

---

**End of Document**

---

[3] Given our disposition of this appeal, we need not address the parties' remaining arguments.

[4] Nothing in this order precludes respondents from seeking dismissal of Ohfuji's claims for any of the reasons set forth in their underlying *motion* to dismiss after the parties have had an opportunity to seek a determination from the bankruptcy court regarding the validity of the sale to Fuji.

THE LAW OFFICE OF MARY F. CHAPMAN, LTD
8440 W. Lake Mead Blvd.
Suite 203
Las Vegas, Nevada 89128
Ph. (702) 202-4223
Fax (702) 202-2003

## DECLARATION OF NATHAN ARMOGAN SUPPORT OF MOTION TO DISMISS

Nathan Armogan, hereby declares under penalty of perjury pursuant to the laws of the State of Nevada that:

1. I am the Manager of Goodwrx, LLC and in my capacity as such I am the custodian of records for employee payroll and time clock issues.

2. Attached hereto as Exhibit A are the time clock records and payroll records for Lajuana Moten. These our Goodwrx, LLC's business records and are kept in the ordinary course of business. The records have not been modified or tampered with.

3. The business records establish Ms. Moten only worked one shift in the last two years. No time clock rounding occurred with Ms. Moten's shift.

4. Attached hereto as Exhibit B are the time clock records and payroll records for Mario Cardenas. These our Goodwrx, LLC's business records and are kept in the ordinary course of business. The records have not been modified or tampered with.

5. The business records establish Mario Cardenas worked seven shifts during the last two year period.

    a. On November 19, 2022 - Mr. Cardenas clocked in at 10:30 and provided the sign in sheet to confirm his attendance with a sign in time of 10:30. Mr. Cardenas was paid for all time worked, there was no rounding of his time clock records.

    b. On December 2, 2022, Mr. Cardenas clocked in at 18:25 (6:25 p.m.) from inside the parking garage. Mr. Cardenas did not provide a photograph of the sign in sheet which could have confirmed when he actually arrived at his work station as required by policy. Although it obviously took over five minutes for Mr. Cardenas to actually report to work he was still paid as though he arrived ready to work at his station at 18:30 (6:30 p.m.).

THE LAW OFFICE OF MARY F. CHAPMAN, LTD
8440 W. Lake Mead Blvd.
Suite 203
Las Vegas, Nevada 89128
Ph. (702) 202-4223
Fax (702) 202-2003

c.   On December 27, 2022, Mr. Cardenas clocked in at 16:55, Mr. Cardenas did not provide a photograph of the sign in sheet. Mr. Cardenas' time was rounded five minutes to reflect his 7:00 p.m. start time.

d.   On December 29, 2022, Mr. Cardenas clocked in at 9:55, Mr. Cardenas did not provide a photograph of the sign in sheet. Mr. Cardenas' time was rounded five minutes to reflect his 10:00 a.m. start time.

e.   On January 6, 2023, Mr. Cardenas clocked in at 5:55, from the pool area. Mr. Cardenas did not provide a photograph of the sign in sheet which could have confirmed when he actually arrived at his work station as required by policy. Although it obviously took over five minutes for Mr. Cardenus to actually report to work he was still paid as though he arrived ready to work at his station at 6:00.

f.   On January 27, 2023, Mr. Cardenas clocked in at 7:57 a.m., Mr. Cardenas did not provide a photograph of the sign in sheet. Mr. Cardenas' time was rounded three minutes to reflect his 8:00 a.m. start time.

g.   On March 5, 2023, Mr. Cardenas clocked in at 15:58 (3:58 p.m.), from off property. Mr. Cardenas did not provide a photograph of the sign in sheet which could have confirmed when he actually arrived at his work station as required by policy. Although it obviously took over five minutes for Mr. Cardenus to actually report to work he was still paid as though he arrived ready to work at his station at 16:00 (4:00 p.m.).

6.   Goodwrx originally time clocked rounded by five (5) minutes, but on February 12, 2023, Goodwrx shortened its time clock rounding to two (2) minutes.

7.   The properties policy and the unions collective bargaining agreement states employees are not entitled to payment until they are actually at their assigned position ready to work. The clock rounding policy allows employees to clock in put their personal belonging away and then proceed to their work stations. No employee actually starts working at the time they clock in. Goodwrx requests a

THE LAW OFFICE OF MARY F. CHAPMAN, LTD
8440 W. Lake Mead Blvd.
Suite 203
Las Vegas, Nevada 89128
Ph. (702) 202-4223
Fax (702) 202-2003

copy of the sign in sheets to verify when the employee actually reported to he work station that way Goodwrx can insure the employees are arriving at the work station on time. Additionally, the sign in sheets allow Goodwrx to correct employee's pay in the event they forget to sign in or sign out.

8.    Goodwrx's written policy in its employee handbook specifically states an employee shall not start working until his/her scheduled start time. A copy of the policy is attached hereto as Exhibit C.

Pursuant to the laws of the State of Nevada, I, Nathan Armogan, hereby declare under penalty of perjury that the foregoing is true and correct and based upon my personal knowledge. Executed this 24th day of December, 2024.

 /S/ Nathan Armogan

Nathan Armogan, Manager Goodwrx, LLC

c/o Mary F. Chapman, Esq. #6591

Law Office of Mary F. Chapman, Ltd.

8440 W. Lake Mead Blvd., Suite 203

Las Vegas, Nevada 89128

(702) 202-4223

- 3 -

**CERTIFICATE OF SERVICE**

I hereby certify that on the 24th day of December, 2024, I served a true and correct copy

of the foregoing **Motion to Dismiss** via the Court's electronic filing system  to:


Jason Kuller, Esq.
Rachel Mariner, Esq.
Rafii & Associates, P.C.
1120 N. Town Center Dr.
Suite 130
Las Vegas, NV 89144



 /S/Mary F. Chapman, Esq. #6591
an employee of the
Law Office of Mary F. Chapman, Ltd.
8440 W. Lake Mead Blvd., Suite 203
Las Vegas, NV 89128

# EXHIBIT A

**Goodwrx: Employee Summary**

| Name: | **Lajuana Moten** |
|---|---|
| Report Updated: | 12/23/24 |
| Hire Date: | 06/10/22 |

| | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|
| **Summary of Shifts** | | | | | | | | |
| Accepted | 15 | 5 | 1 | 12 | 8 | 5 | 1 | 47 |
| Canceled by Employee | | 1 | | | 3 | | | 4 |
| Canceled by Manager | | 1 | | 2 | 4 | | | 7 |
| | | | | | | | | |
| Total Hours Worked: | 124.0 | 37.6 | 7.9 | 88.0 | 55.7 | 41.0 | 4.0 | 358.2 |
| Total Wages: | $ 2,966.88 | $ 804.00 | $ 150.04 | $ 1,148.96 | $ 772.21 | $ 777.80 | $ 65.00 | $ 6,684.89 |

**Property Complaints:**

| Date | Location | Complaint |
|---|---|---|
| 12/01/22 | Triple George Grill | Unable to perform work duties (said couldn't lift using her arm) |
| 10/21/22 | Circus Circus | Block list, continuously short on bank (two shifts in a row, short $20) |
| 09/22/22 | Circus Circus | Added 30 min to lunch without permission (1.5hrs) and claimed she was working |
| 06/17/22 | Bally | Not capable of being a cook |
| 08/04/22 | Treasure Island | Unfavorable feedback on performance - asked to not return |
| 09/09/22 | Circus Circus | Unable to work popcorn stand - sent home |
| 09/25/22 | Treasure Island | Negative performance feedback from Box Office |

| Ref | Property | Department | Job Classification | ShiftStartedAt | Payroll Clock In | Payroll Clock Out | Hours Worked | Status | Clock In Type | App Clock In | Min Early | App Clock In Coordinates | ClockOutType |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Caesars Forum | Banquets and Convention Service | Cook | 6/11/2022 13:00 | 6/11/2022 13:00 | 6/11/2022 21:00 | 8.00 | Accepted | By Employee | 6/11/2022 21:05 | | | Auto (By Device) |
| 2 | Caesars Forum | Banquets and Convention Service | Cook | 6/12/2022 13:00 | 6/12/2022 13:00 | 6/12/2022 21:00 | 8.00 | Accepted | NULL | NULL | | | NULL |
| 3 | Caesars Forum | Banquets and Convention Service | Cook | 6/13/2022 14:00 | 6/13/2022 14:00 | 6/13/2022 22:00 | 8.00 | Accepted | NULL | NULL | | | NULL |
| 4 | Caesars Forum | Banquets and Convention Service | Cook | 6/14/2022 14:00 | 6/14/2022 10:00 | 6/14/2022 22:00 | 12.00 | Accepted | NULL | NULL | | | NULL |
| 5 | Caesars Forum | Banquets and Convention Service | Cook | 6/15/2022 13:00 | 6/15/2022 13:00 | 6/15/2022 21:00 | 8.00 | Accepted | NULL | NULL | | | Auto (By Server) |
| 6 | Caesars Forum | Banquets and Convention Service | Cook | 6/16/2022 6:00 | 6/16/2022 6:00 | 6/16/2022 14:00 | 8.00 | Accepted | NULL | NULL | | | Auto (By Device) |
| 7 | Bally's Las Vegas | Employee Dining Room | Fry Cook | 6/17/2022 14:30 | 6/17/2022 14:00 | 6/17/2022 22:00 | 8.00 | Accepted | NULL | NULL | | | Auto (By Device) |
| 8 | Bally's Las Vegas | Employee Dining Room | Fry Cook | 6/18/2022 14:30 | 6/18/2022 14:30 | 6/18/2022 22:30 | 8.00 | Accepted | NULL | NULL | | | Auto (By Device) |
| 9 | Bally's Las Vegas | Employee Dining Room | Fry Cook | 6/19/2022 14:30 | 6/19/2022 14:30 | 6/19/2022 22:30 | 8.00 | Accepted | NULL | NULL | | | Auto (By Device) |
| 10 | Bally's Las Vegas | Employee Dining Room | Fry Cook | 6/20/2022 14:30 | 6/20/2022 14:30 | 6/20/2022 22:30 | 8.00 | Accepted | NULL | NULL | | | NULL |
| 11 | Bally's Las Vegas | Employee Dining Room | Fry Cook | 6/24/2022 8:00 | 6/24/2022 8:00 | 6/24/2022 16:00 | 8.00 | Accepted | NULL | NULL | | | By Employee |
| 12 | Bally's Las Vegas | Employee Dining Room | Fry Cook | 6/25/2022 8:00 | 6/25/2022 8:00 | 6/25/2022 16:00 | 8.00 | Accepted | By Employee | 6/25/2022 7:56 | 4 | 36.1137667, -115.1689924 | Auto (By Device) |
| 13 | Bally's Las Vegas | Employee Dining Room | Fry Cook | 6/26/2022 8:00 | 6/26/2022 8:00 | 6/26/2022 14:00 | 8.00 | Accepted | NULL | NULL | | | Auto (By Device) |
| 14 | Bally's Las Vegas | Employee Dining Room | Fry Cook | 6/27/2022 8:00 | 6/27/2022 6:00 | 6/27/2022 14:00 | 8.00 | Accepted | NULL | NULL | | | Auto (By Server) |
| 15 | Bally's Las Vegas | Employee Dining Room | Fry Cook | 6/28/2022 13:00 | 6/28/2022 13:00 | 6/28/2022 21:00 | 8.00 | Accepted | NULL | NULL | | | Auto (By Server) |
| 16 | Paris Las Vegas | JJ's Boulangerie | Cook's Helper | 7/1/2022 15:00 | 7/1/2022 15:22 | 7/1/2022 23:00 | 7.63 | Accepted | By Employee | 7/1/2022 15:22 | | 36.11433167, -115.16668833 | Auto (By Device) |
| 17 | Paris Las Vegas | JJ's Boulangerie | Cook's Helper | 7/2/2022 15:00 | 7/2/2022 15:01 | 7/2/2022 23:00 | 7.98 | Accepted | By Employee | 7/2/2022 15:01 | | 36.1119141, -115.1693689 | Auto (By Device) |
| 18 | Paris Las Vegas | JJ's Boulangerie | Cook's Helper | | 7/5/2022 22:00 | | | Canceled by Employee | | | | | |
| 19 | Paris Las Vegas | JJ's Boulangerie | Cook's Helper | 7/6/2022 15:00 | 7/6/2022 15:00 | 7/6/2022 23:00 | 8.00 | Accepted | By Employee | 7/6/2022 14:56 | 4 | 36.111725, -115.16629333 | Auto (By Device) |
| 20 | Paris Las Vegas | JJ's Boulangerie | Cook's Helper | 7/7/2022 15:00 | 7/7/2022 15:00 | 7/7/2022 23:00 | 8.00 | Accepted | NULL | NULL | | | NULL |
| 21 | Treasure Island | Sports Bar | Cook | | 7/16/2022 22:00 | | | Canceled by Manager | | | | | |
| 22 | Treasure Island | Gilley's | Cook | 7/27/2022 18:30 | 7/27/2022 18:30 | 7/28/2022 0:30 | 6.00 | Accepted | By Employee | 7/27/2022 18:25 | 5 | 36.1241919, -115.1707599 | By Employee |
| 23 | Treasure Island | Retreat | Cook | 8/2/2022 15:00 | 8/2/2022 15:04 | 8/2/2022 23:00 | 7.93 | Accepted | By Employee | 8/2/2022 15:04 | | 36.1249413, -115.17204 | By Employee |
| 24 | Circus Circus Las Vegas | Circus Spirits | Sales Associate | 9/4/2022 16:00 | 9/4/2022 16:00 | 9/5/2022 0:00 | 8.00 | Accepted | NULL | NULL | | | NULL |
| 25 | Circus Circus Las Vegas | Essentials | Sales Associate | 9/5/2022 12:00 | 9/5/2022 12:00 | 9/5/2022 20:00 | 8.00 | Accepted | By Employee | 9/5/2022 11:56 | 4 | 36.1376185, -115.1655998 | By Employee |
| 26 | Circus Circus Las Vegas | Lucky's Candyland | Sales Associate | 9/9/2022 12:00 | 9/9/2022 12:00 | 9/9/2022 20:00 | 8.00 | Accepted | By Employee | 9/9/2022 12:04 | | | Auto (By Server) |
| 27 | Circus Circus Las Vegas | Lucky's Candyland | Sales Associate | | 9/10/2022 19:00 | | | Canceled by Manager | | | | | |
| 28 | Circus Circus Las Vegas | Lucky's Candyland | Sales Associate | | 9/11/2022 19:00 | | | Canceled by Manager | | | | | |
| 29 | Circus Circus Las Vegas | Market Express | Sales Associate | 9/16/2022 11:00 | 9/16/2022 11:00 | 9/16/2022 19:00 | 8.00 | Accepted | By Employee | 9/16/2022 10:58 | 2 | 36.1377579, -115.1656408 | Auto (By Device) |
| 30 | Circus Circus Las Vegas | Market Express | Sales Associate | 9/17/2022 11:00 | 9/17/2022 11:00 | 9/17/2022 19:00 | 8.00 | Accepted | By Employee | 9/17/2022 10:55 | 5 | 36.1372329, -115.1637742 | By Employee |
| 31 | Circus Circus Las Vegas | Big Top Shop | Sales Associate | 9/18/2022 10:00 | 9/18/2022 10:00 | 9/18/2022 18:35 | 8.58 | Accepted | By Employee | 9/18/2022 9:56 | 4 | 36.1368467, -115.1638387 | Auto (By Device) |
| 32 | Circus Circus Las Vegas | Market Express | Sales Associate | 9/21/2022 12:00 | 9/21/2022 12:00 | 9/21/2022 19:30 | 7.50 | Accepted | By Employee | 9/21/2022 11:55 | 5 | 36.1368713, -115.1637473 | Auto (By Device) |
| 33 | Circus Circus Las Vegas | Market Express | Sales Associate | 9/22/2022 12:00 | 9/22/2022 12:00 | 9/22/2022 20:00 | 8.00 | Accepted | NULL | NULL | | | Auto (By Server) |
| 34 | Treasure Island | Entertainment | Ticket Office Representativ | 9/23/2022 16:33 | 9/23/2022 16:33 | 9/23/2022 18:20 | 1.78 | Accepted | By Employee | 9/23/2022 16:33 | | | Auto (By Server) |
| 35 | Circus Circus Las Vegas | Circus Express | Sales Associate | 9/24/2022 14:00 | 9/24/2022 15:43 | 9/24/2022 22:00 | 6.28 | Accepted | By Employee | 9/24/2022 15:43 | | 36.1377051, -115.1652279 | Auto (By Device) |
| 36 | Circus Circus Las Vegas | Drinks & Snacks | Sales Associate | 9/25/2022 12:00 | 9/25/2022 12:07 | 9/25/2022 20:00 | 7.88 | Accepted | By Employee | 9/25/2022 12:07 | | 36.138385, -115.16606667 | Auto (By Device) |
| 37 | Circus Circus Las Vegas | Drinks & Snacks | Sales Associate | 9/30/2022 14:00 | 9/30/2022 14:00 | 9/30/2022 22:00 | 8.00 | Accepted | By Employee | 9/30/2022 15:23 | | 36.13670865, -115.16419391 | Auto (By Device) |
| 38 | Circus Circus Las Vegas | Drinks & Snacks | Sales Associate | 10/1/2022 14:00 | 10/1/2022 14:00 | 10/1/2022 22:00 | 8.00 | Accepted | By Employee | 10/1/2022 14:33 | | | Auto (By Server) |
| 39 | Circus Circus Las Vegas | It's Vegas (Lobby) | Sales Associate | 10/2/2022 10:00 | 10/2/2022 10:00 | 10/2/2022 18:00 | 8.00 | Accepted | By Employee | 10/2/2022 10:00 | | 36.14404229, -115.16388609 | By Employee |
| 40 | Circus Circus Las Vegas | Essentials | Sales Associate | 10/7/2022 17:00 | 10/7/2022 17:19 | 10/7/2022 23:00 | 5.68 | Accepted | By Employee | 10/7/2022 17:19 | | 36.13794506, -115.16546339 | By Employee |
| 41 | Circus Circus Las Vegas | Essentials | Sales Associate | 10/8/2022 17:00 | 10/8/2022 17:00 | 10/8/2022 23:00 | 6.00 | Accepted | By Employee | 10/8/2022 16:55 | 5 | 36.13689377, -115.16425936 | By Employee |
| 42 | Flamingo Las Vegas | Banquets and Convention Service | Cook | 10/9/2022 14:00 | 10/9/2022 14:00 | 10/9/2022 22:00 | 8.00 | Accepted | By Employee | 10/9/2022 13:59 | 1 | 36.11619211, -115.17075199 | By Employee |
| 43 | Circus Circus Las Vegas | Essentials | Sales Associate | | 10/9/2022 16:00 | | | Canceled by Employee | | | | | |
| 44 | Circus Circus Las Vegas | It's Vegas (Lobby) | Sales Associate | 10/14/2022 18:00 | 10/14/2022 18:00 | 10/15/2022 0:00 | 6.00 | Accepted | By Employee | 10/14/2022 17:55 | 5 | 36.1369729, -115.16397825 | Auto (By Device) |
| 45 | Circus Circus Las Vegas | It's Vegas (Lobby) | Sales Associate | 10/15/2022 18:00 | 10/15/2022 18:00 | 10/16/2022 0:00 | 6.00 | Accepted | By Employee | 10/15/2022 17:59 | 1 | 36.13684801, -115.16563151 | By Employee |
| 46 | Flamingo Las Vegas | Banquets and Convention Service | Cook | | 10/18/2022 21:00 | | | Canceled by Employee | | | | | |
| 47 | Circus Circus Las Vegas | Drinks & Snacks | Sales Associate | 10/21/2022 10:00 | 10/21/2022 10:00 | 10/21/2022 18:00 | 8.00 | Accepted | By Employee | 10/21/2022 9:55 | 5 | 36.13789942, -115.16576387 | Auto (By Device) |
| 48 | Circus Circus Las Vegas | Sweet Stuff | Sales Associate | | 10/21/2022 23:30 | | | Canceled by Manager | | | | | |
| 49 | Circus Circus Las Vegas | Drinks & Snacks | Sales Associate | | 10/22/2022 17:00 | | | Canceled by Manager | | | | | |
| 50 | Circus Circus Las Vegas | Sweet Stuff | Sales Associate | | 10/22/2022 23:30 | | | Canceled by Manager | | | | | |
| 51 | Circus Circus Las Vegas | Sweet Stuff | Sales Associate | | 10/23/2022 21:00 | | | Canceled by Manager | | | | | |
| 52 | Caesars Forum | Banquets and Convention Service | Cook | | 10/25/2022 20:00 | | | Canceled by Employee | | | | | |
| 53 | Caesars Palace | Banquets and Convention Service | Kitchen Worker | 11/1/2022 17:00 | 11/1/2022 17:02 | 11/2/2022 1:00 | 7.97 | Accepted | By Employee | 11/1/2022 17:02 | | 36.11712057, -115.17861052 | By Employee |
| 54 | Caesars Palace | Banquets and Convention Service | Kitchen Worker | 11/3/2022 17:00 | 11/3/2022 17:00 | 11/4/2022 1:00 | 8.00 | Accepted | By Employee | 11/3/2022 16:57 | 3 | 36.12095792, -115.17985733 | Auto (By Device) |
| 55 | Virgin Hotels LV | Culinary | Banquet Cook | 11/15/2022 14:00 | 11/15/2022 13:00 | 11/15/2022 22:00 | 9.00 | Accepted | NULL | NULL | | | Auto (By Server) |
| 56 | Caesars Palace | Banquets and Convention Service | Banquet Cook | 11/18/2022 14:00 | 11/18/2022 14:00 | 11/18/2022 22:00 | 8.00 | Accepted | By Employee | 11/18/2022 13:59 | 1 | 36.11706123, -115.17792928 | By Employee |
| 57 | Caesars Palace | Banquets and Convention Service | Banquet Cook | 11/19/2022 14:00 | 11/19/2022 14:00 | 11/19/2022 22:00 | 8.00 | Accepted | By Employee | 11/19/2022 13:59 | 1 | 36.11707596, -115.17644779 | By Employee |
| 58 | Downtown Grand Casino | Triple George Grille | Saute Cook | 12/1/2022 15:30 | 12/1/2022 15:30 | 12/1/2022 19:30 | 4.00 | Accepted | By Employee | 12/1/2022 15:35 | | 36.17200548, -115.1400355 | By Employee |

| Ref | Property | Job Classification | ShiftStartedAt | App Clock In | Min Early | App Clock In Coordinates | Notes |
|---|---|---|---|---|---|---|---|
| 12 | Bally's Las Vegas | Fry Cook | 6/25/2022 8:00 | 6/25/2022 7:56 | 4 | 36.1137667, -115.1689924 | |
| 19 | Paris Las Vegas | Cook's Helper | 7/6/2022 15:00 | 7/6/2022 14:56 | 4 | 36.111725, -115.16629333 | Clocked in off property. See image 19a. |
| 22 | Treasure Island | Cook | 7/27/2022 18:30 | 7/27/2022 18:25 | 5 | 36.1241919, -115.1707599 | |
| 25 | Circus Circus Las Vegas | Sales Associate | 9/5/2022 12:00 | 9/5/2022 11:56 | 4 | 36.1376185, -115.1655998 | |
| 29 | Circus Circus Las Vegas | Sales Associate | 9/16/2022 11:00 | 9/16/2022 10:58 | 2 | 36.1377579, -115.1656408 | |
| 30 | Circus Circus Las Vegas | Sales Associate | 9/17/2022 11:00 | 9/17/2022 10:55 | 5 | 36.1372329, -115.1637742 | |
| 31 | Circus Circus Las Vegas | Sales Associate | 9/18/2022 10:00 | 9/18/2022 9:56 | 4 | 36.1368467, -115.1638387 | Time sheet EE writes 10am-6:35pm. See 31a |
| 32 | Circus Circus Las Vegas | Sales Associate | 9/21/2022 12:00 | 9/21/2022 11:55 | 5 | 36.1368713, -115.1637473 | |
| 41 | Circus Circus Las Vegas | Sales Associate | 10/8/2022 17:00 | 10/8/2022 16:55 | 5 | 36.13689377, -115.16425936 | |
| 42 | Flamingo Las Vegas | Cook | 10/9/2022 14:00 | 10/9/2022 13:59 | 1 | 36.11619211, -115.17075199 | Clocked in at street entrance. See image 42a. |
| 44 | Circus Circus Las Vegas | Sales Associate | 10/14/2022 18:00 | 10/14/2022 17:55 | 5 | 36.1369729, -115.16397825 | |
| 45 | Circus Circus Las Vegas | Sales Associate | 10/15/2022 18:00 | 10/15/2022 17:59 | 1 | 36.13684801, -115.16563151 | Clocked in at parking lot. See image 45a & 45b. |
| 47 | Circus Circus Las Vegas | Sales Associate | 10/21/2022 10:00 | 10/21/2022 9:55 | 5 | 36.13789942, -115.16576387 | |
| 54 | Caesars Palace | Kitchen Worker | 11/3/2022 17:00 | 11/3/2022 16:57 | 3 | 36.12095792, -115.17985733 | Clocked in off property. See image 54a. |
| 56 | Caesars Palace | Banquet Cook | 11/18/2022 14:00 | 11/18/2022 13:59 | 1 | 36.11706123, -115.17792928 | Time sheet EE writes 2p-10p. See image 56a. |
| 57 | Caesars Palace | Banquet Cook | 11/19/2022 14:00 | 11/19/2022 13:59 | 1 | 36.11707596, -115.17644779 | |

19a.



31a.

**CIRCUS CIRCUS**
LAS VEGAS

9/18/2022

**Goodwrx**
**Sign In Sheet**

First, Last Name
Dominic
Lajuana Moten
sa Rivas de Marquez
Leroy Brown

| First, Last Name | Badge # | InfoGen POS | | Date | Shift In | Shift Out | Lunch Out | Lunch In | Initials |
|---|---|---|---|---|---|---|---|---|---|
| | Goodwrx Goodwrx HR1 | Temp #1 | 804609 | 9/18/22 | 10a | 6p | 315p | 415p | WORKED DIDN'T SIGN |
| | Goodwrx Goodwrx HR12 | Temp #12 | 804608 | 9/18/22 | 10a | 6:35Pm | 415pm | 515pm | |
| | Goodwrx Goodwrx HR3 | Temp #3 | 804607 | 9/18/22 | 12p | 8p | 5pm | 6pm | _(signature)_ |
| | Goodwrx Goodwrx HR4 | Temp #4 | 804606 | 9/18/22 | 12p | 8p | 5pm | 6pm | |
| | Goodwrx Goodwrx HR5 | Temp #5 | 804605 | | | | | | |
| | Goodwrx Goodwrx HR6 | Temp #6 | 804604 | | | | | | |
| | Goodwrx Goodwrx HR7 | Temp #7 | 804603 | | | | | | |
| | Goodwrx Goodwrx HR8 | Temp #8 | 804602 | | | | | | |
| | Goodwrx Goodwrx HR9 | Temp #9 | 804601 | | | | | | |
| | Goodwrx Goodwrx HR10 | Temp #10 | 804600 | | | | | | |
| | Goodwrx Goodwrx HR11 | Temp #11 | 804599 | | | | | | |
| | Goodwrx Goodwrx HR12 | Temp #12 | 804598 | | | | | | |
| | Goodwrx Goodwrx HR13 | Temp #13 | 804597 | | | | | | |
| | Goodwrx Goodwrx HR14 | Temp #14 | 804596 | | | | | | |
| | Goodwrx Goodwrx HR15 | Temp #15 | 804595 | | | | | | |

804598

42a.



45a.



45b.



54a.

56a.



Payroll / View / Employee Payroll Vouchers　　　　　Company: (3700) GOODWRX, LLC　　　　　Help　　Actions

### Employee Payroll Vouchers

Employee　　G37791　🔍　　MOTEN LAJUANA　　　　Year　　2022 ▾

| Voucher# | Check/Advice# | Type | Pay Date | Gross Earnings | Expense Reimbursements | Gross Pay | Deductions | Taxes | Net Pay | Weeks |
|---|---|---|---|---|---|---|---|---|---|---|
| 120365 | 4931607 | Deposit | 12/23/2022 | 65.00 | 0.00 | 65.00 | 0.00 | 4.97 | 60.03 | 2.00 |
| 114972 | 4886789 | Deposit | 12/09/2022 | 304.64 | 0.00 | 304.64 | 0.00 | 23.30 | 281.34 | 2.00 |
| 087025 | 4843172 | Deposit | 11/25/2022 | 343.30 | 0.00 | 343.30 | 0.00 | 26.26 | 317.04 | 2.00 |
| 067843 | 4799200 | Deposit | 11/10/2022 | 233.91 | 0.00 | 233.91 | 0.00 | 17.90 | 216.01 | 2.00 |
| 055360 | 4753567 | Deposit | 10/28/2022 | 460.16 | 0.00 | 460.16 | 0.00 | 35.20 | 424.96 | 2.00 |
| 048136 | 4710955 | Deposit | 10/14/2022 | 623.93 | 0.00 | 623.93 | 0.00 | 60.31 | 563.62 | 2.00 |
| 041485 | 4662802 | Deposit | 09/30/2022 | 524.81 | 0.00 | 524.81 | 0.00 | 42.82 | 481.99 | 2.00 |
| 040083 | 4624968 | Deposit | 09/16/2022 | 208.00 | 0.00 | 208.00 | 0.00 | 15.92 | 192.08 | 2.00 |
| 037867 | | Check | 09/02/2022 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 032437 | 4538412 | Deposit | 08/19/2022 | 149.96 | 0.00 | 149.96 | 0.00 | 11.47 | 138.49 | 2.00 |
| 030088 | 4485569 | Deposit | 08/05/2022 | 113.46 | 0.00 | 113.46 | 0.00 | 8.68 | 104.78 | 2.00 |
| 027844 | 4449191 | Deposit | 07/22/2022 | 690.36 | 0.00 | 690.36 | 0.00 | 52.81 | 637.55 | 2.00 |
| 024714 | 4400198 | Deposit | 07/08/2022 | 2091.04 | 0.00 | 2091.04 | 0.00 | 310.09 | 1780.95 | 2.00 |
| 021762 | 4364589 | Deposit | 06/28/2022 | 875.84 | 0.00 | 875.84 | 0.00 | 79.97 | 795.87 | 2.00 |
| 021756 | 4363331 | Deposit | 06/27/2022 | -875.84 | 0.00 | -875.84 | 0.00 | -79.97 | -795.87 | -2.00 |
| 020834 | 4363331 | Deposit | 06/24/2022 | 875.84 | 0.00 | 875.84 | 0.00 | 79.97 | 795.87 | 2.00 |
| Totals | | | | 6684.41 | 0.00 | 6684.41 | 0.00 | 689.70 | 5994.71 | |

# EXHIBIT B

**Goodwrx: Employee Summary**

| | |
|---|---|
| Name: | **Mario Cardenas** |
| Report Updated: | 12/24/24 |
| | |
| Hire Date: | 11/15/22 |

| | Nov | Dec | Jan | Feb | Mar | Apr | May | June | July | August | September | October | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Summary of Shifts** | | | | | | | | | | | | | |
| Accepted | 3 | 4 | 3 | - | 2 | - | - | 4 | - | 1 | - | 4 | 21 |
| Canceled by Employee | 2 | - | 1 | - | - | - | - | 4 | - | 1 | - | - | 8 |
| Canceled by Manager | - | - | - | - | 1 | - | - | - | - | - | - | 4 | 5 |
| | | | | | | | | | | | | | |
| Total Hours Worked: | 8.0 | 17.6 | 12.0 | - | 4.0 | - | - | - | - | - | - | - | 41.5 |
| Total Wages: | $ 109.88 | $ 227.47 | $ 157.22 | $ - | $ 63.05 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 557.62 |

**Property Complaints:**

| Date | Location | Complaint |
|---|---|---|
| 03/05/23 | Downtown Grand | Refused to perform duties |

| Ref | Name | Property | Department | Job Classification | ShiftStartedAt | Payroll Clock In | Payroll Clock Out | Hours Worked | Status | Clock In Type | App Clock In | Min Early | App Clock In Coordinates | ClockOutType |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Mario Card | Downtown Grand Casino | Freedom Beat | Food Runner | 11/19/2022 10:30 | 11/19/2022 12:51 | 11/19/2022 16:00 | 8 | Accepted | By Employee | 11/19/2022 12:51 | | 36.1718721, -115.1413004 | By Employee |
| 2 | Mario Card | Treasure Island | Sports Bar | Bus Person | 12/2/2022 18:30 | 12/2/2022 18:25 | 12/3/2022 2:21 | 7.866666 | Accepted | By Employee | 12/2/2022 18:25 | 5 | 36.1250222, -115.1746413 | By Employee |
| 3 | Mario Card | Treasure Island | Gilley's | Bus Person | 12/27/2022 17:00 | 12/27/2022 16:55 | 12/27/2022 23:00 | 6 | Accepted | By Employee | 12/27/2022 16:55 | 5 | 36.1250179, -115.1713561 | By Employee |
| 4 | Mario Card | Caesars Palace | Bacchanal Buffet | Bus Person | 12/29/2022 10:00 | 12/29/2022 9:55 | 12/29/2022 13:41 | 3.7 | Accepted | By Employee | 12/29/2022 9:55 | 5 | 36.1171626, -115.1771368 | By Employee |
| 5 | Mario Card | Bellagio | In Room Dining | Bus Person/Food Runner | 1/6/2023 6:00 | 1/6/2023 5:55 | 1/6/2023 9:57 | 3.966666 | Accepted | By Employee | 1/6/2023 5:55 | 5 | 36.1122299, -115.1779849 | By Employee |
| 6 | Mario Card | Downtown Grand Casino | Freedom Beat | Food Runner | 1/27/2023 8:00 | 1/27/2023 7:57 | 1/27/2023 16:02 | 8 | Accepted | By Employee | 1/27/2023 7:57 | 3 | 36.1718043, -115.1414825 | By Employee |
| 7 | Mario Card | Downtown Grand Casino | Freedom Beat | Food Runner | 3/5/2023 16:00 | 3/5/2023 15:58 | 3/5/2023 20:00 | 4.016666 | Accepted | By Employee | 3/5/2023 15:58 | 2 | 36.1709824, -115.1411352 | By Employee |

| Ref | Property | Job Classification | ShiftStartedAt | App Clock In | Min Early | App Clock In Coordinates | Notes |
|---|---|---|---|---|---|---|---|
| 2 | Treasure Island | Bus Person | 12/2/2022 18:30 | 12/2/2022 18:25 | 5 | 36.1250222, -115.1746413 | Clocked inside parking garage. See 2a. |
| 3 | Treasure Island | Bus Person | 12/27/2022 17:00 | 12/27/2022 16:55 | 5 | 36.1250179, -115.1713561 | |
| 4 | Caesars Palace | Bus Person | 12/29/2022 10:00 | 12/29/2022 9:55 | 5 | 36.1171626, -115.1771368 | |
| 5 | Bellagio | Bus Person/Food I | 1/6/2023 6:00 | 1/6/2023 5:55 | 5 | 36.1122299, -115.1779849 | Clocked in pool area. See 5a. |
| 6 | Downtown Grand Casino | Food Runner | 1/27/2023 8:00 | 1/27/2023 7:57 | 3 | 36.1718043, -115.1414825 | |
| 7 | Downtown Grand Casino | Food Runner | 3/5/2023 16:00 | 3/5/2023 15:58 | 2 | 36.1709824, -115.1411352 | Clocked in off property. See 7a. |

2a.



5a.



7a.



| Name | Property | Department | Labor Classification | Hiring Manager | Date | Wage Rate | Clock In | Clock Out | Type | Hours | Total Wages |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Mario Cardenas | Downtown Grand Casino | Freedom Beat | Food Runner | Daniel Harn | 11/19/2022 | 13.74 | 11/19/2022 10:30 | 11/19/2022 18:30 | Regular Rate | 8.00 | 109.88 |
| Mario Cardenas | Treasure Island | Sports Bar | Bus Person | Jessica Santiago | 12/2/2022 | 12.29 | 12/2/2022 18:30 | 12/3/2022 2:21 | Regular Rate | 7.87 | 96.7 |
| Mario Cardenas | Treasure Island | Gilley's | Bus Person | Matt West | 12/27/2022 | 12.29 | 12/27/2022 17:00 | 12/27/2022 23:00 | Regular Rate | 6.00 | 73.75 |
| Mario Cardenas | Caesars Palace | Bacchanal Buffet | Bus Person | Ramon Triay | 12/29/2022 | 15.41 | 12/29/2022 10:00 | 12/29/2022 13:41 | Regular Rate | 3.70 | 57.02 |
| Mario Cardenas | Bellagio | In Room Dining | Bus Person/Food Runner | James M Reynolds | 1/6/2023 | 15.46 | 1/6/2023 6:00 | 1/6/2023 9:57 | Regular Rate | 3.97 | 61.33 |
| Mario Cardenas | Downtown Grand Casino | Freedom Beat | Food Runner | Daniel Harn | 1/27/2023 | 15.70 | 1/27/2023 8:00 | 1/27/2023 16:00 | Regular Rate | 8.00 | 125.56 |
| Mario Cardenas | Downtown Grand Casino | Freedom Beat | Food Runner | Daniel Harn | 3/5/2023 | 15.70 | 3/5/2023 16:00 | 3/5/2023 20:00 | Regular Rate | 4.02 | 63.05 |

# EXHIBIT C



| Day | From: | To: |
|---|---|---|
| Monday | 00:00 | 24:00 |
| Tuesday | 00:00 | 24:00 |
| Wednesday | 00:00 | 24:00 |
| Thursday | 00:00 | 24:00 |
| Friday | 00:00 | 24:00 |
| Saturday | 00:00 | 24:00 |
| Sunday | 00:00 | 24:00 |

Holiday hours are the same as Non-Holiday hours

Employees will be assigned a work schedule and will be expected to begin and end work according to the schedule. To accommodate the needs of the business, at some point Goodwrx may need to change individual work schedules on either a short-term or long-term basis.

Employees will be provided meal and rest periods as required by law. A supervisor will provide further details.

## 2-4. Timekeeping Procedures

Non-exempt employees must record the time work begins and ends, via the "clock in" and "clock out" function on the Goodwrx App. Altering, falsifying, failing to clock in or out, or tampering with time records is prohibited and subjects the employee to discipline, up to and including discharge.

Non-exempt employees may not start work until their scheduled starting time but will be able to "clock in" within 5 minutes of their scheduled start time for purposes of convenience. Non-exempt temp employees may not work later than their scheduled end time without a documented request from their job site supervisor to Goodwrx. Employees will be allowed to "clock out" up to 5 minutes after their scheduled end time for purposes of convenience. If the employee has not "clocked out" within this window, they will be automatically "clocked out" by the Goodwrx App. Any errors in the time record should be reported immediately to support@goodwrx.com, and Goodwrx will attempt to correct legitimate errors.

Goodwrx Employee Handbook

12

# EXHIBIT D

**Electronically Filed**
**1/7/2025 11:50 PM**
**Steven D. Grierson**
**CLERK OF THE COURT**

**OPPM**
Jason Kuller, NV Bar No. 12244
Rachel Mariner, NV Bar No. 16728
RAFII & ASSOCIATES, P.C.
1120 N. Town Center Dr., Suite 130
Las Vegas, Nevada 89144
Tel: (725) 245-6056
Fax: (725) 220-1802
jason@rafiilaw.com
rachel@rafiilaw.com
*Attorneys for Plaintiffs*

**EIGHTH JUDICIAL DISTRICT COURT**

**CLARK COUNTY, NEVADA**

| | |
|---|---|
| LAJUANA MOTEN and MARIO CARDENAS, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br> v. <br><br> GOODWRX LLC, a Nevada Limited Liability Company; and DOES 1 through 50, inclusive, <br><br> Defendants. | Case No. A-24-906408-C <br> Dept. No. 29 <br><br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT GOODWRX LLC'S  MOTION TO DISMISS** |

Plaintiffs Lajuana Moten and Mario Cardenas, on behalf of themselves and all others similarly situated (collectively "Plaintiffs"), hereby oppose the Motion to Dismiss ("Motion") filed by Defendant Goodwrx LLC ("Defendant" or "Goodwrx").  This Opposition is based on the following points and authorities, all pleadings on file in this matter, and any further argument or evidence entertained by the Court.

**I.**

**Plaintiffs' Complaint Is a Class Action.**

Plaintiffs' initial pleading is labelled "CLASS ACTION COMPLAINT." (*See* Complaint filed November 19, 2024, at 1:12.)  The very first allegation announces that "This is a class action…." (*See id*. at ¶ 1.)  The footer on every page displays "CLASS ACTION COMPLAINT." (*See id*. at 1-10.)  The Complaint specifically identifies "Class Members" as "PARTIES." (*See id*. at ¶ 6.)  The

1

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

Complaint also includes a separate section devoted to "CLASS ACTION ALLEGATIONS." (*See id.* at ¶¶ 32-41.) Chief among those allegations is that "Plaintiffs bring this action on behalf of themselves as a class action under Nevada Rule of Civil Procedure 23." (*See id.* at ¶ 33.) Furthermore, each of Plaintiffs' three causes of action states that it is being brought "On Behalf of Plaintiffs and Class Members." (*See id.* at 8:3, 8:22, and 9:11.) Each cause of action contains a separate demand for payment by "Plaintiffs and Class Members." (*See id.* at ¶¶ 48, 53, 59.) Finally, the general prayer for relief is made on behalf of Plaintiffs and Class Members. (*See id.* at 10:4)

**II.**

**<u>Defendant's Motion to Dismiss Ignores Plaintiffs' Class Claims and Damages.</u>**

Defendant moves to dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction pursuant to NRCP Rule 12(b)(1). (Motion at 1:18-20.) Specifically, Defendant's Motion contends that Plaintiffs' claims fail to meet the jurisdictional requirement of $15,000 amount in controversy. (*Id.* at 5:25-6:2.) Defendant advances this argument by introducing extrinsic evidence ostensibly showing minimal harm suffered by the individual named Plaintiffs Lajuana Moten and Mario Cardenas. (*See id.* at 1:23 -3:1 & Ex. 1 (Declaration of Nathan Armogan), Ex. A (Moten employment records), Ex. B (Cardenas employment records), Ex. C (Goodwrx Employee Handbook excerpt).)

Defendants' Motion, however, ignores the claims and damages of Class Members. Instead, Defendant's Motion pretends that Plaintiffs' case is limited to the two named individual plaintiffs. (*See* Motion at 1-6 (omitting any mention of class action, class members, class claims, or class damages).) Defendants' Motion is thus premised on a blatant misrepresentation by omission.

**III.**

**<u>NRCP 23 Requires Aggregation of All Class Members' Claims for Purposes of Jurisdiction.</u>**

Turns out there is a very good reason why Defendant's Motion makes no mention of Plaintiffs' class claims. That is because, in a class action, the damages of all potential class members are aggregated to determine the total amount in controversy:

> The representative parties may aggregate the value of the individual claims of ***all potential class members*** to establish district court jurisdiction over a class action.

NRCP Rule 23(b). Defendant's analysis ignores NRCP 23 even though Plaintiffs' Complaint plainly

2

**PLAINTIFFS' OPPOSITION TO DEFENDANT GOODWRX LLC'S MOTION TO DISMISS**

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

identifies itself as "a class action under Nevada Rule of Civil Procedure 23." (*See* Complaint at ¶ 33.) Defendant's Motion and "evidence" are entirely silent on the number of putative class members employed by Goodwrx or the aggregate value of their individual claims. Defendant's Motion is nothing but a straw man sham.

### IV.

### Defendant's Motion Also Ignores the Added Value of
### Plaintiffs' Second and Third Causes of Action.

Even though Defendant's Motion purports to be the judge, jury, and executioner of Plaintiffs' claims, the Motion does not grapple with either Plaintiffs' Second Cause of Action (for unpaid overtime) or Plaintiffs' Third Cause of Action (for unpaid waiting time). Even if Defendant's one-sided damage calculation were valid, it is limited to the normal hourly rate of unpaid straight-time hours (*i.e.*, Plaintiffs' First Cause of Action for failure to pay each hour worked). (*See* Motion at 5:1-4.) There is no consideration or calculation of unpaid overtime, which would be compensated at one and one-half (1½) times the employee's regular rate. (*See* NRS 608.018; Complaint at ¶¶49-53.) Nor does Defendant's calculation include waiting time wages, which leaves the largest hole in Defendant's Motion other than ignoring the aggregation of class damages.

So let us assume *arguendo* that Defendant is correct, and that Plaintiff Mario Cardenas has only been shortchanged $3.08. Under Nevada law, Mr. Cardenas would still be entitled to 30 days of waiting time wages because of Defendant's underpayment at the time of his separation from employment. (*See* NRS 608.020-.050; Plaintiff's Complaint at ¶¶ 54-59.) This means Mr. Cardenas' waiting time claim is worth $3,360 ($14 hourly rate x 8 hours per day x 30 days). To the extent Ms. Moten was underpaid a penny, she too would be owed $3,360. That would still leave Plaintiffs $8,280 short of the amount in controversy requirement. But wait: Aggregating the waiting time claims of 200 potential class members (Complaint at ¶ 40) – which Defendant does not dispute – adds an additional $672,000. *See* NRCP Rule 23(b). Suddenly Plaintiffs' claims ***exceed*** the amount in controversy by approximately ***$663,723.08***.

At the very least, and contrary to Defendant's Motion, there is no "legal certainty" here that Plaintiffs' claims are worth less than $15,000. (*See* Motion at 3:23-4:12 (citing *Edwards v. Direct*

3

*Access, LLC*, 121 Nev. 930, 933 (2005).)[1]

## V.

### Defendant's Motion Also Applies the Wrong Limitations Period to Plaintiffs' Claims.

Finally, Defendant's damage calculation is premised on a two-year limitations period. (See Motion at 1:26-27, 2:10.)  While a two-year limitations period applies to minimum wage claims, Plaintiffs' claims are all governed by a four-year statute of limitations.  *See* NRS 11.220; *Martel v. HG Staffing*, LLC, --- Nev. ---, 519 P.3d 25, 29-30 (2022).  Consequently, any damage calculation of Plaintiffs' claims would be approximately *double* whatever Defendant is contending.

### CONCLUSION

For all the foregoing reasons, Defendant's Motion to Dismiss should be denied.

DATED: January 7, 2025                    **RAFII & ASSOCIATES, P.C.**

By:    */s/ Jason Kuller*
       JASON KULLER
       Of Counsel
       *Attorneys for Plaintiffs*

---

[1] Although Defendant's reliance on *Edwards* is appropriate, Defendant's Motion elsewhere relies on an **unpublished** Nevada court of appeal opinion (also attached to Defendant's Motion).  *See* Motion at 3:19-21 & n.1.  This is prohibited by NRAP 36(c)(3): "[U]npublished dispositions issued by the Court of Appeals may not be cited **in any Nevada court for any purpose**." (emphasis added).

4

**PLAINTIFFS' OPPOSITION TO DEFENDANT GOODWRX LLC'S MOTION TO DISMISS**

## CERTIFICATE OF SERVICE

I hereby certify that on the date shown file stamped above, I served a true and correct copy of the foregoing pleading on all registered parties with the Court's electronic filing system.

/s/ Jason Kuller
Jason Kuller
Of Counsel
RAFII & ASSOCIATES, P.C.
1120 N. Town Center Dr., Suite 130
Las Vegas, Nevada 89144
Tel: (725) 245-6056
Fax: (725) 220-1802
jason@rafiilaw.com

# EXHIBIT E

Electronically Filed
1/14/2025 11:52 PM
Steven D. Grierson
CLERK OF THE COURT

**FAC**
Jason Kuller, NV Bar No. 12244
Rachel Mariner, NV Bar No. 16728
RAFII & ASSOCIATES, P.C.
1120 N. Town Center Dr., Suite 130
Las Vegas, Nevada 89144
Tel: (725) 245-6056
Fax: (725) 220-1802
jason@rafiilaw.com
rachel@rafiilaw.com
*Attorneys for Plaintiffs*

**EIGHTH JUDICIAL DISTRICT COURT**

**CLARK COUNTY, NEVADA**

| | |
|---|---|
| LAJUANA MOTEN and MARIO CARDENAS, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br>    v.<br><br>GOODWRX LLC, a Nevada Limited Liability Company; and DOES 1 through 50, inclusive,<br><br>        Defendants. | Case No. A-24-906408-B<br>Dept. No.  16<br><br>**FIRST AMENDED COMPLAINT**<br><br>**CLASS ACTION COMPLAINT FOR:**<br>  1) Failure to Pay Wages for Each Hour Worked in Violation of NRS 608.016;<br>  2) Failure to Pay Overtime in Violation of NRS 608.018; and<br>  3) Failure to Pay All Wages Due and Owing in Violation of NRS 608.020-050.<br><br>**COLLECTIVE ACTION COMPLAINT FOR:**<br>  4) Failure to Pay Overtime in Violation of the FLSA, 29 U.S.C. § 207;<br><br>**ARBITRATION EXEMPTION: CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

1

**FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT**
Case Number: A-24-906408-B

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

Plaintiffs Lajuana Moten and Mario Cardenas (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, allege as follows:

1.      This is a class and collective action for unpaid wages and overtime, liquidated damages, attorneys' fees, costs, and interest under Nevada Revised Statutes ("NRS") Chapter 608 and the federal Fair Labor Standards Act, 29 U.S.C. §§ 201 *et. seq.* ("FLSA").

2.      All allegations in this Complaint are based on information and belief except for those allegations pertaining specifically to Plaintiffs, which are based on Plaintiffs' personal knowledge.

3.      Each allegation in this Complaint either has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

## PARTIES

4.      Defendant Goodwrx LLC ("Defendant" or "Goodwrx") is a Nevada limited liability company that enables hospitality employers to meet critical labor needs by hiring temporary employees on a shift-by-shift basis through the Goodwrx App.  Temp workers hired and assigned through the Goodwrx App are paid directly by Goodwrx and considered Goodwrx employees.

5.      Plaintiff Lajuana Moten is a natural person who, within the last four years, has been employed by Goodwrx as a non-exempt hourly employee in Clark County, Nevada.

6.      Plaintiff Mario Cardenas is a natural person who, within the last four years, has been employed by Goodwrx as a non-exempt hourly employee in Clark County, Nevada.

7.      "Nevada Class Members" are all current and former hourly workers employed by Goodwrx at any time in the State of Nevada within four years before the filing of the original complaint in this action until the date of judgment (the "Nevada Class Period").

8.      "FLSA Class Members" are all current and former hourly workers employed by Goodwrx in the United States within three years before the filing of the original complaint in this action until the date of judgment (the "FLSA Class Period").

9.      Nevada Class Members and FLSA Class Members are collectively referred to herein as "Class Members."

10.     The identities of Does 1-50 ("Doe Defendants") are unknown at this time, and Plaintiffs' complaint will be amended at such a time when Plaintiffs learn of their true identities.

2

**FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT**

Plaintiffs are informed and believes that each of the Doe Defendants is responsible in some manner for the acts, omissions, or representations alleged herein. Specifically, Plaintiffs are informed and believes that the hospitality employers hiring Plaintiffs and Class Members through the Goodwrx App may be Doe Defendants as joint employers with Goodwrx.

11.    Any reference in this Complaint to "Defendant," "Defendants," "Doe Defendants," or "Goodwrx" shall mean "Defendants and each of them."

## JURISDICTION AND VENUE

12.    This Court has original jurisdiction over the claims alleged herein because the amount in controversy exceeds $15,000.

13.    The Court has jurisdiction over Plaintiff's federal FLSA claims because state courts have concurrent jurisdiction with federal courts over federal employment law claims. The FLSA specifically provides an action to recover damages under the FLSA may be maintained in any "State court of competent jurisdiction by any one of more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).

14.    Venue is proper in this Court because one or more of the Defendants maintains its principal place of business, or otherwise is found, in this judicial district and the acts complained of herein occurred in Clark County, Nevada.

## FACTUAL ALLEGATIONS

15.    Plaintiffs incorporate and reallege all paragraphs above.

## THE GOODWRX APP

16.    The Goodwrx App is marketed as a "technology solution…creating a labor centric gig economy one shift at a time." (*See* https://goodwrx.com (ellipsis and lower case added).) Available for both Apple and Android devices, the Goodwrx App promises employers "direct access to thousands of highly-skilled and experienced hospitality professionals to manage your labor needs." (*See* https://apps.apple.com/us/app/goodwrx-business/id1574508873.) According to Goodwrx, "Here is how it works:

- Post shift-based jobs as early as same day
- Goodwrx instantly sends excusive offers to those who are qualified and best matched with your needs

3

**FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT**

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

- All timekeeping, payroll processing, IRS compliance, and workers comp is handled by Goodwrx"

(*Id*.)  Particularly relevant here, the Goodwrx App promises "Innovative time-keeping systems" that are "Portable" and "Low cost."  (*See* https://goodwrx.com/#products.)

## PLAINTIFFS' OFF-THE-CLOCK WORK

17.    Goodwrx handled all employee timekeeping through the Goodwrx App.

18.    Plaintiffs and other Goodwrx employees were required to record their time worked on the Goodwrx App.

19.    More specifically, Plaintiffs and other employees were required to record the start and end times of their work via the "clock in" and "clock out" function on the Goodwrx App.

20.    However, the "clock in" and "clock out" function on the Goodwrx App *always* rounded work hours in favor of Goodwrx.[1]

21.     When Plaintiffs "clocked in" within 5 minutes *before* their scheduled start time, the Goodwrx App would round their clock-in time forward to the scheduled start time.  But if Plaintiffs "clocked in" within 5 minutes *after* their scheduled start time, the Goodwrx App would record the actual start time with no rounding backward.

22.    Conversely, when Plaintiffs "clocked out" up to 5 minutes *after* their scheduled end time, the Goodwrx App would round their clock-out time backward to the scheduled end time.  But if Plaintiffs "clocked out" within 5 minutes *before* their scheduled end time, the Goodwrx App would record the actual end time with no rounding forward.

23.    Furthermore, if Plaintiffs did not clock out within 5 minutes of their end time, the Goodwrx App would *automatically* clock them out.  This "automatic" clock out time would then be automatically rounded backward to the scheduled end time,  thereby ensuring no shift overtime would be worked.

24.    There was no corresponding automatic clock-in at the start of Plaintiffs' shifts.  If Plaintiffs failed or forgot to clock in, the Goodwrx App did not assume that Plaintiffs had started

---

[1] This rounding policy also favored any joint employer (*e.g.*, the hotel where a Goodwrx employee would be assigned for a given shift).

**FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT**

working.

25.    Because Goodwrx employees were expected to report to work on time and to begin work on time, Plaintiffs and other employees frequently started working within 5 minutes before their scheduled start times.

26.    Because these were temporary and usually first-time assignments, Plaintiffs and other employees did not know the precise amount of time it would take them to arrive at their work locations – especially considering the unpredictability of parking and the labyrinthine sprawl of a Las Vegas hotel.  Plaintiffs and other employees thus erred on the side of arriving early at work.

27.    Once at work and subject to supervision, Plaintiffs and other employees started working even if it were a few minutes before their scheduled start time, and even if it was before the five-minute window in which they were allowed to clock in.  Plaintiffs and other employees did not want to risk being sent home – or not being hired again – by appearing to be lazy or "clockwatching."

28.    By the same token, because Goodwrx employees were expected to work up until the end of their shifts, Plaintiffs and other employees practically never left work early.  Indeed, it was far more usual for Plaintiffs and other employees to work a few minutes beyond the end of their shifts and sometimes beyond the five-minute cutoff for being automatically clocked out.  On those occasions, Plaintiffs and other employees were automatically clocked out while still working.

29.    Plaintiffs and other employees were sometimes paid daily overtime for working beyond their scheduled shifts, but this required a documented request to Goodwrx from the job site supervisor.  The job site supervisor, however, had no incentive to make such a request and was happy to accept "free" labor from Plaintiffs and other temp workers.  Besides, Plaintiffs and other employees had no control or leverage over the job site supervisor to ensure any request would be made.

30.    In this way, Goodwrx's one-way rounding policy failed to compensate Plaintiffs and other employees for all time actually worked.  Not only did the Goodwrx App prevent Plaintiffs and other employees from recording any time worked outside their scheduled shifts, but Goodwrx also prevented Plaintiffs and other employees from ever benefitting under its rounding policy.  The rounding policy embedded in the Goodwrx App did not "even out" or average out over time and was, instead, always skewed in favor of Goodwrx.

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

**FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT**

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

31.     Furthermore, to the extent Plaintiffs and other employees worked 8 hours a day or 40 hours a week, any unpaid "rounding" time also constitutes unpaid daily or weekly overtime.

32.     Rather than accurately recording employees' work hours – *i.e.*, recording their actual clock-in and clock-out times – Goodwrx put the burden on Plaintiffs and other employees to report any errors in their time records and to request that Goodwrx fix the errors manually.  Yet because of the way the Goodwrx App was programmed, timekeeping errors **were the rule** – not the exception.  One-way rounding is a **feature** of the Goodwrx App, not a bug.[2]

33.     Nor would Goodwrx compensate employees for the necessary time spent reporting and following up with Goodwrx to have their time records corrected.  Nor was there any guarantee that Goodwrx would fix the errors at all.  The only thing stated in the Goodwrx Employee Handbook is that "Goodwrx will **attempt** to correct **legitimate** errors."   (Goodwrx Employee Handbook ["Handbook"] at § 2-4 (emphasis added).)  Goodwrx, of course, is the arbiter of what constitutes a "legitimate" error.

34.     Ms. Moten's last day of work for Goodwrx was in or around December 2022; Mr. Cardenas' last day of work for Goodwrx was in or around March 2023.

35.     To date, Plaintiffs have not been paid wages and overtime for all "rounding" or off-the-clock time worked.

## NEVADA CLASS ACTION ALLEGATIONS

36.     Plaintiffs incorporate and reallege all paragraphs above.

37.     Plaintiffs bring this action on behalf of themselves and Nevada Class Members ("the Nevada Class") as a class action under Nevada Rule of Civil Procedure 23.

38.     At all relevant times, Plaintiffs and Nevada Nevada Class Members  were each an "employee" within the meaning of Nevada law.  *See* NRS 608.010.

39.     At all relevant times, Goodwrx was an "employer" of Plaintiffs and Nevada Class Members  within the meaning of Nevada law.  *See* NRS 608.011.

40.     At all relevant times, Goodwrx implemented, maintained, and enforced a rounding

---

[2] Perhaps this is what Goodwrx means in describing its "Innovative timekeeping system" as "Low cost."  (*See* https://goodwrx.com/#products.)

**FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT**

policy that deprived Plaintiffs and Nevada Class Members from being paid for all hours and overtime worked beyond their scheduled shift times.

41.    At all relevant times, there was no practical administrative difficulty in recording – and paying for – the actual hours and overtime worked by Plaintiffs and Nevada Class Members.

42.    At all relevant times, Goodwrx had actual or constructive knowledge that Plaintiffs and Nevada Class Members were performing work outside their scheduled shift hours and, particularly, within the 5-minute "rounding" windows on either side of their shifts.

43.    To date, neither Plaintiffs nor Nevada Class Members have been paid all wages and overtime owed by Goodwrx.

44.    Class treatment of Nevada Class Members is appropriate under Rule 23 for the following reasons:

A.    *Numerosity*:  Nevada Class Members are so numerous that joinder would be impractical, and the disposition of their claims on a class (rather than individual) basis will conserve resources of the parties and judicial system.  While the number of Nevada Class Members is unknown at this time, this information can be readily ascertained from Defendant's business records.  Upon information and belief, Defendant employs, or has employed, over 200 Nevada Class Members during the Class Period.

B.    *Commonality*:  Common questions of law and fact exist and predominate as to Plaintiffs and Nevada Class Members, including, but not limited to:  (1) whether the rounding policy implemented by Goodwrx is legal under Nevada law;  (2) whether the Goodwrx App deprived Plaintiffs and Nevada Class Members of compensation for all hours and overtime worked; and (3) whether Plaintiffs and Nevada Class Members have been paid all wages due and owing upon separation from employment.

C.    *Typicality*:  Plaintiffs' claims are typical of the claims of Nevada Class Members because Plaintiffs and Nevada Class Members were subject to the same employment policies and practices of Goodwrx during the Class Period, and each of them sustained damages.  Proof of a common or single state of facts will therefore establish the right of Plaintiffs and Nevada Class Members to recover.

**FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT**

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

D.   *Adequacy*:  Plaintiffs will fairly and adequately represent the interests of Nevada Class Members because Plaintiffs are Nevada Class Members and have the same legal and factual issues as Nevada Class Members and have no interests antagonistic to Nevada Class Members.  Plaintiffs have retained legal counsel competent and experienced in class actions, including labor and employment litigation.  Plaintiffs and their counsel are aware of their fiduciary responsibilities to Nevada Class Members and are determined to discharge those duties diligently by vigorously seeking the maximum possible recovery for Nevada Class Members.

E.   *Superiority*:  A class action is superior to other available means for the fair and efficient adjudication of this controversy. Each Class Member has been damaged and is entitled to recovery by reason of Defendant's illegal rounding policy and practice.  Class action treatment will permit a relatively large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of effort and expense.  Furthermore, the prosecution of individual lawsuits by each Nevada Class Member would present the risk of inconsistent and contradictory judgments, along with the potential for establishing inconsistent standards of conduct for Defendants and other state employers.  Consequently, an important public interest will be served by addressing this matter as a class action.

45.   Plaintiffs reserve the right to modify or redefine "Nevada Class Members" for purposes of this action and to add subclasses as appropriate based on further investigation, discovery, and theories of liability.

## FLSA COLLECTIVE ACTION ALLEGATIONS

46.   Plaintiffs incorporate and reallege all paragraphs above.

47.   Plaintiffs also bring this action as a collective action on behalf of themselves and similarly-situated FLSA Class Members ("the FLSA Class") pursuant to 29 U.S.C. § 216(b).

48.   Plaintiffs and FLSA Class Members are similarly situated based on the same factors of commonality, typicality, and adequacy enumerated above.[3]

49.   At all relevant times, Plaintiffs  and FLSA Class Members were each an "employee"

---

[3] A showing of numerosity or superiority is not required for FLSA collective actions.

8

**FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT**



RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

within the meaning of the FLSA. *See* 29 U.S.C. § 203(e), (g).

50.    At all relevant times, Defendant was an "employer" of Plaintiffs and FLSA Class Members within the meaning of the FLSA. *See* 29 U.S.C. § 203(d), (g).

51.    The allegations concerning Nevada Class Members in paragraphs  67 through 75, *supra*,  apply equally to FLSA Class Members.

52.    Nevada Class Members and FLSA Class Members overlap such that members of the Nevada Class may be members of the FLSA Class, and vice versa.  Plaintiffs are a member of both the Nevada Class and the FLSA Class.

53.    Plaintiffs reserve the right to modify or redefine "FLSA Class Members" for purposes of this action and to add subclasses as appropriate based on further investigation, discovery, and theories of liability.

## FIRST CAUSE OF ACTION

### Failure to Compensate for Each Hour Worked

### (On Behalf of Plaintiffs and Nevada Class Members)

54.    Plaintiffs incorporate and reallege all paragraphs above.

55.    NRS 608.016 states that "An employer shall pay to the employee wages for each hour the employee works."

56.    Hours worked means anytime the employer exercises "control or custody" over an employee. *See* NRS 608.011 (defining an "employer" as "every person having control or custody of any employment, place of employment or any employee.").

57.    Pursuant to the Nevada Administrative Code, hours worked includes "all time worked by the employee at the direction of the employer, including time worked by the employee that is outside the scheduled hours of work of the employee." N.A.C. 608.115(1).

58.    Here, Goodwrx failed to pay Plaintiffs and Nevada Class Members for all "rounding" time and off-the-clock work outside their scheduled shift hours.

59.     Defendant's policy and practice violated NRS 608.016, which requires payment for each and every hour worked.

60.    Wherefore, Plaintiffs and Nevada Class Members demand payment by Defendant at

9

**FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT**

their regular hourly rate of pay for each and every hour worked during the Nevada Class Period, together with attorney's fees, costs, and interest as provided by law.

### SECOND CAUSE OF ACTION

### Failure to Pay Overtime Wages

### (On Behalf of Plaintiffs and Nevada Class Members)

61.    Plaintiffs incorporate and reallege all paragraphs above.

62.    NRS § 608.018(1) generally requires employers to pay overtime at 1½ times an employee's regular wage rate for all hours worked in excess of 8 per day or 40 per week.

63.    The Goodwrx Employee Handbook also states that "[a]ny non-exempt employee who works overtime will be compensated at the rate of one and one-half times (1.5) their normal hourly wage for all time worked in excess of 40 hours each week or 8 hours on a given workday…." (Handbook at § 2-5.)

64.    Here, by failing to pay for each hour worked as hereinabove provided, Goodwrx also failed to pay overtime to Plaintiffs and Nevada Class Members who worked over 8 hours in a workday and over 40 hours in a workweek.

65.    Wherefore, Plaintiffs and Nevada Class Members demand payment at one and one-half times their regular rate of pay for all hours worked in excess of 8 hours in a workday and 40 hours in a workweek during the Nevada Class Period together with attorney's fees, costs, and interest as provided by law.

### THIRD CAUSE OF ACTION

### Failure to Pay All Wages and Compensation Due

### (On Behalf of Plaintiffs and Nevada Class Members)

66.    Plaintiffs incorporate and reallege all paragraphs above.

67.    NRS 608.020 provides that "[w]henever an employer discharges an employee, the wages and compensation earned and unpaid at the time of such discharge shall become due and payable immediately."

68.    NRS 608.040(1)(a-b), in relevant part, states that "Within 3 days after the wages or compensation of a discharged employee becomes due; or on the day the wages or compensation is

10

**FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT**

due to an employee who resigns or quits, the wages or compensation of the employee continues at the same rate from the day the employee resigned, quit, or was discharged until paid for 30-days, whichever is less."

69.    NRS 608.050 grants an "employee lien" to each discharged or laid-off employee for the purpose of collecting the wages or compensation owed to them "in the sum agreed upon in the contract of employment for each day the employer is in default, until the employee is paid in full, without rendering any service therefor; but the employee shall cease to draw such wages or salary 30 days after such default."

70.    Here, by failing to pay Plaintiffs and Nevada Class Members for all hours and overtime worked as hereinabove provided, Goodwrx has failed to timely remit all wages and compensation due and owing to Plaintiffs and Nevada Class Members upon separation of their employment.

71.    Wherefore, Plaintiffs and Nevada Class Members demand up to thirty (30) days wages under  NRS 608.040 and NRS 608.050, together with attorneys' fees, costs, and interest as provided by law.

**FOURTH CAUSE OF ACTION**

**Failure to Pay Overtime Wages**

**(On Behalf of Plaintiffs and FLSA Class Members)**

72.    Plaintiffs incorporate and reallege all paragraphs above.

73.    The FLSA provides that "[N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C § 207(a)(1).

74.    Here, at all relevant times, Defendant failed to pay one and one-half times the applicable regular rate of pay for all hours worked over 40 by Plaintiffs and FLSA Class Members in any given workweek.

75.    For example, Goodwrx failed to pay weekly overtime to Plaintiff Lajuana Moten

11

**FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT**

during the workweeks covering June 11, 2022, through June 20, 2022.

76.    Defendant's failure to pay overtime to Plaintiffs and FLSA Class Members was and is a willful violation of the FLSA.  Defendants knew or should have known that their timekeeping policies would fail to capture all time and overtime worked by Plaintiffs and FLSA Class Members.

77.    Wherefore, Plaintiffs and FLSA Class Members demand payment by Defendant at one and one-half times their regular rate of pay for all hours worked in excess of 40 hours a week during the FLSA Class Period, plus an additional equal amount as liquidated damages, together with attorney's fees, costs, and interest as provided by law.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs, individually and on behalf of Class Members and all others similarly situated, pray for relief as follows:

1.    For damages according to proof of the regular rate of pay for each and every hour worked;

2.    For damages, according to proof, of overtime compensation at one and one-half times the regular rate of pay for all unpaid hours worked over 40 in a week pursuant to NRS 608.018 or 29 USC § 207;

3.    For up to 30 days of wages, according to proof,  pursuant to NRS 608.040 and NRS 608.050 for Plaintiffs and Nevada Class Members;

4.    For liquidated (double) damages pursuant to 29 U.S.C. § 216(b) on behalf of PlaintiffS and FLSA Class Members;

5.    For an order certifying this action as a class action under Nevada Rule of Civil Procedure 23 on behalf of Nevada Class Members;

6.    For an order conditionally certifying this action as a collective action under the FLSA on behalf of FLSA Class Members;

7.    For an order appointing Plaintiffs as class representatives and their counsel as class counsel for Nevada Class Members and FLSA Class Members;

8.     For reasonable attorneys' fees authorized by statute, common law, or equity;

9.     For costs of suit incurred herein;

12

**FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT**

RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

10.    For pre-judgment and post-judgment interest at the maximum legal rate;

11.    For exemption from the Nevada Arbitration Rules pursuant to N.A.R 3 and 5; and

12.    For such other and further relief as the Court may deem just and proper.

### JURY DEMAND

Plaintiffs hereby demands trial by jury of the above-captioned matter pursuant to Nevada Rule of Civil Procedure 38.

DATED: January 14, 2025            **RAFII & ASSOCIATES, P.C.**

By:    */s/ Jason Kuller*
       JASON KULLER
       Of Counsel
       *Attorneys for Plaintiffs*



RAFII & ASSOCIATES, P.C.
EXCELLENCE | COMMITMENT | RESULTS

13
**FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT**

## CERTIFICATE OF SERVICE

I hereby certify that on the date shown file stamped above, I served a true and correct copy of the foregoing pleading on all registered parties with the Court's electronic filing system.

/s/ Jason Kuller
Jason Kuller
Of Counsel
RAFII & ASSOCIATES, P.C.
1120 N. Town Center Dr., Suite 130
Las Vegas, Nevada 89144
Tel: (725) 245-6056
Fax: (725) 220-1802
jason@rafiilaw.com