# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| LAJUANA MOTEN and MARIO CARDENAS, on behalf of themselves and all other similarly situated, | Case No.: 2:25-cv-00096-APG-BNW |
| | **Order Granting Motion to Compel Arbitration** |
| Plaintiffs | |
| v. | [ECF No. 6] |
| GOODWRX, LLC, | |
| Defendant | |

Lajuana Moten and Mario Cardenas bring this class action suit against their former employer Goodwrx, LLC for unpaid wages and overtime. ECF No. 1 at 6. Goodwrx moves to compel individual arbitration of the claims, arguing that Moten and Cardenas agreed to arbitrate their disputes as part of the hiring process. ECF No. 6 at 2-3. Moten and Cardenas respond that the Goodwrx arbitration provision is unconscionable because it failed to give adequate notice. ECF No. 10 at 5-10. They also argue that Goodwrx waived its right to arbitrate because it participated in litigation in the state court before removing the case here. *Id*. at 4-5.

Goodwrx provided reasonably conspicuous notice of its terms of use—including a link to the arbitration provision—and Moten and Cardenas assented to those terms. Thus, it is not unconscionable. Goodwrx's few actions in the state court did not waive its right to arbitrate. I therefore grant Goodwrx's motion to compel arbitration and stay this case pending completion of that arbitration.

## I.    BACKGROUND

Goodwrx hires employees and assigns them to hospitality companies needing temporary workers. ECF No. 1 at 7. As part of the hiring process, Goodwrx employees must establish an

account on the Goodwrx App, which Goodwrx uses for employee timekeeping. *Id*. at 8. Employees clock in and out using the Goodwrx App. *Id.*  Moten and Cardenas claim the Goodwrx App rounded their logged time so Goodwrx did not properly pay all wages and overtime due them. *Id.* at 10.

When creating their Goodwrx App accounts, employees must agree to the terms and conditions of that App. ECF No. 6-1 at 1.  Those conditions include a provision requiring binding arbitration of disputes:

> ALL CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT (INCLUDING ITS FORMATION, PERFORMANCE AND BREACH), THE PARTIES' RELATIONSHIP WITH EACH OTHER AND/OR YOUR USE OF THE SERVICES SHALL BE FINALLY SETTLED BY BINDING ARBITRATION ADMINISTERED BY JAMS IN ACCORDANCE WITH THE PROVISIONS OF ITS STREAMLINED ARBITRATION RULES.

*Id.* at 14-15 (all caps in original).

## II.    ANALYSIS

### A.  Legal Standard

Arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2.  The Federal Arbitration Act (FAA) limits the district court's role to determining (1) whether a valid arbitration agreement exists, and (2) whether the dispute at issue is covered by the agreement. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014).  I do not consider the merits of the underlying dispute. *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 478 (9th Cir. 1991).  Because the plaintiffs do not dispute that the Goodwrx arbitration provision encompasses their claims, I need only decide whether that provision is valid.

1    I determine if an arbitration agreement is valid by applying "ordinary state law principles

2    that govern the formation of contracts." *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 680

3    (9th Cir. 2024) (quotation omitted).  Nevada has a "fundamental policy favoring the

4    enforceability of arbitration agreements," and it "liberally construe[s] arbitration clauses in favor

5    of granting arbitration." *Uber Techs., Inc. v. Royz*, 517 P.3d 905, 908 (Nev. 2022) (en banc)

6    (quotation omitted).

7    **B.  The Arbitration agreement is valid.**

8    The plaintiffs argue the arbitration agreement is unconscionable because it failed to give

9    them adequate notice and it is one-sided in favor of Goodwrx. ECF No. 10 at 6-10.  The

10    Supreme Court of Nevada has held that online users of a website accept a company's terms and

11    conditions when they "indisputably" perform an action, such as creating an account, that requires

12    the user to agree to the terms. *Royz*, 517 P.3d at 911 n.3.  This inference applies regardless of

13    whether the user actually clicked on a hyperlink or reviewed the terms. *Id.*

14    The *Royz* court relied on *Meyer v. Uber Technologies, Inc.*, a Second Circuit case that

15    addressed the issue of when an online notice provides the user with reasonably conspicuous

16    notice. *Id.*; 868 F.3d 66, 77-80 (2d Cir. 2017).  The *Meyer* court held that a company provided

17    reasonable notice of its terms and conditions when it (1) displayed a notice that by creating an

18    account the user agreed to the company's terms of service; (2) this notice text, which included

19    the underlined hyperlinks to the terms, appeared directly below the registration button; (3) the

20    dark font color of the notice "contrast[ed] with the bright white background, and the hyperlinks

21    [were] in blue and underlined;" and (4) the hyperlinked text was immediately visible to the user

22    without scrolling down. *Meyer*, 868 F.3d at 78.  The *Meyer* court also noted elements of an

23    insufficiently conspicuous notice on a webpage, including distracting variations of font sizes and

3

1  colors, elements cluttering the user's screen, and the notice of the terms not being "directly

2  adjacent to the button intended to manifest assent to the terms." *Id.* (quotation omitted).  The

3  opinion specified that the insufficiently conspicuous notice lacked spatial and temporal

4  proximity to the "create account" button, whereas notices that properly coupled the notice to the

5  mechanism for manifesting assent would provide "notice of the Terms of Service . . .

6  simultaneously to enrollment, thereby connecting the contractual terms to the services to which

7  they apply." *Id.*  The Second Circuit reasoned that a "reasonably prudent smartphone user would

8  understand that the terms were connected to the creation of a user account," and so long as the

9  hyperlinked text was reasonably conspicuous, such users were given constructive notice of the

10  terms. *Id.* at 78-79.

11       The *Royz* court also cited to *Cordas v. Uber Technologies Inc.*, 228 F. Supp. 3d 985

12  (N.D. Cal. 2017).  The *Cordas* court ruled that the user of an app assented to the company's

13  terms by affirmatively clicking a "DONE" button to complete the sign-up process on a page that

14  displayed a notice saying "[b]y creating an . . . account, you agree to the Terms & Conditions

15  and Privacy Policy." *Id.* at 990.  The *Royz* court noted that it does not matter whether the user

16  actually clicked the hyperlink to the terms or viewed them, so long as they had reasonably

17  conspicuous notice and proceeded to manifest their assent to the terms by completing the online

18  process. *Royz*, 517 P.3d at 911 n.3.

19       The Ninth Circuit has similarly held that such online agreements are enforceable "only if:

20  (1) the website provides reasonably conspicuous notice of the terms to which the consumer will

21  be bound; and (2) the consumer takes some action, such as clicking a button or checking a box,

22  that unambiguously manifests his or her assent to those terms." *Berman v. Freedom Fin.*

23  *Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022).

Here, when creating an account on the Goodwrx App, the applicant is informed at the top of the relevant page, just above the user's entry of their email address, that "By tapping Create, you agree to our Privacy Policy and Terms of Use." ECF No. 6-1 at 3.  The hyperlinks to the privacy policy and terms of use, which include the arbitration provision, are in blue font—different from the surrounding black—and use the same font size as the surrounding text.  Nothing in the presentation deemphasizes the textual notice or draws attention away from the notice.  Such presentation elements were recommended by the *Berman* court. 30 F.4th at 856-57.

The Goodwrx notice page also satisfies *Berman*'s requirement of unambiguous manifestation of assent.

> A user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement. . . . The presence of an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound is critical to the enforceability of [such an] agreement.

*Id*. at 857-58 (simplified).  The Goodwrx App language is nearly identical to what the *Berman* and *Cordas* courts found appropriate to demonstrate unambiguous manifestation of consent. *Compare* ECF No. 6-1 at 3 *with* 30 F.4th at 858 ("This notice defect could easily have been remedied by including language such as, 'By clicking the Continue >> button, you agree to the Terms & Conditions.'") *and Cordas*, 228 F. Supp. 3d at 990 (finding the user of an app assented to terms and conditions by affirmatively clicking a "DONE" button to complete the sign-up process on a page that displayed a notice saying "By creating an . . . account, you agree to the Terms & Conditions and Privacy Policy").

Goodwrx provided reasonably conspicuous notice of its terms, which included the arbitration provision.  The arbitration agreement is not procedurally unconscionable.  "Nevada law requires both procedural and substantive unconscionability to invalidate a contract as

1  unconscionable." *U.S. Home Corp. v. Michael Ballesteros Tr.*, 415 P.3d 32, 40 (Nev. 2018).

2  Because the Goodwrx arbitration provision is not procedurally unconscionable, I need not

3  address whether it is substantively unconscionable.  The arbitration provision is valid,

4  enforceable, and governs the resolution of the plaintiffs' claims here.

5          **C.  Goodwrx has not waived its right to arbitrate the dispute.**

6          Moten and Cardenas contend that Goodwrx waived its right to invoke arbitration by

7  litigating this case in the state court. ECF No. 10 at 4-5.  Preliminarily, the arbitration agreement

8  delegates this issue to the arbitrator. *See* ECF No. 6-1 at 15 ("THE ARBITRATOR, AND NOT

9  ANY FEDERAL, STATE OR LOCAL COURT OR AGENCY, SHALL HAVE EXCLUSIVE

10  AUTHORITY TO RESOLVE ALL DISPUTES ARISING OUT OF OR RELATING TO THE

11  INTERPRETATION, APPLICABILITY, ENFORCEABILITY OR FORMATION OF THESE

12  TERMS . . . .").  Neither side relies on nor even acknowledges this delegation clause, so I will

13  address the waiver issue.

14          In order to prevail on their waiver argument, the plaintiffs must show Goodwrx took

15  "intentional acts inconsistent with" the right to arbitrate. *Armstrong v. Michaels Stores, Inc.*, 59

16  F.4th 1011, 1015 (9th Cir. 2023).  I look at the totality of Goodwrx's actions to see if Goodwrx

17  sought a "judicial judgment on the merits . . . ." *Id*. (simplified).  "[A] party generally acts

18  inconsistently with exercising the right to arbitrate when it (1) makes an intentional decision not

19  to move to compel arbitration and (2) actively litigates the merits of a case for a prolonged

20  period of time in order to take advantage of being in court." *Id*. (simplified).

21          The plaintiffs initiated this case on November 19, 2024 in Nevada state court. ECF No.

22  10-1 at 6.  Goodwrx moved to dismiss the case because it did not satisfy the state district court's

23  jurisdictional threshold. ECF No. 1 at 20-25.  Shortly thereafter, Goodwrx moved to transfer the

case to the state's business court. ECF No. 10-1 at 6-7.  The plaintiffs filed their First Amended Complaint on January 14, 2025, which raised a federal question. *Id*. at 8.  Goodwrx removed the case to this federal district court the next day. ECF No. 1.

Goodwrx did not seek a judicial decision on the merits of the case.  Its motion to dismiss was limited to the state district court's jurisdiction based on the amount at issue. ECF No. 1 at 20-25.  The case was not pending in the state court for an extended period of time and Goodwrx removed the case the day after that became an available option.  Goodwrx's motion was timely filed 12 days after removal.  Goodwrx has not waived its right to arbitration.

**III.    CONCLUSION**

I THEREFORE ORDER that the defendant's motion to compel arbitration **(ECF No. 6) is GRANTED.**

I FURTHER ORDER that this case is stayed pending completion of arbitration.  The parties shall file a status report about the arbitration by the earlier of 30 days after completion of the arbitration or January 15, 2026 and every six months thereafter.

DATED this 2nd day of June, 2025.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE